## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| RONALD E. DUBERRY, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 14-01258 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 19, 26 |
| | : | | |
| DISTRICT OF COLUMBIA, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

**GRANTING DEFENDANTS' MOTION TO DISMISS; DENYING AS MOOT PLAINTIFFS' MOTION FOR ORAL ARGUMENT**

## I.  INTRODUCTION

In this action, four retired correctional officers seek injunctive and declaratory relief that will require the District of Columbia Department of Corrections, their former employing agency, to classify them as retired "law enforcement officers" within the meaning of the federal Law Enforcement Officers Safety Act.  They seek this classification so that, pursuant to local administrative procedures, they may obtain a current firearm certification, which, in turn, is required by the Act before retired law enforcement officers may carry concealed firearms across state lines.  The defendants have moved to dismiss the action for lack of Article III and subject-matter jurisdiction or, alternatively, for failure to state a claim.  Also before the Court is the plaintiffs' unopposed motion for oral argument.

The Court dismisses the plaintiffs' claims insofar as they seek relief on behalf of "future" retired correctional officers not presently before the Court, given that the plaintiffs lack third-party standing to seek such relief.  The Court also dismisses all claims against the individual defendants in their official capacities, given that such claims are duplicative of those against the

District of Columbia.  In all other respects, the Court grants the motion to dismiss as to the

claims against the District: Although the Court has Article III and subject-matter jurisdiction, the

plaintiffs have failed to state a claim that the Department of Corrections, in refusing to classify

them as retired "law enforcement officers," violated a right enforceable under § 1983.  Because

the Court resolves all issues presented in the motion to dismiss, it denies as moot the plaintiffs'

motion for oral argument.

## II.  BACKGROUND

### A.  Statutory Framework

In 2004, Congress enacted the Law Enforcement Officers Safety Act ("LEOSA" or "the

Act").  *See* LEOSA, Pub. L. 108–277, 118 Stat. 865 (2004), *codified at* 18 U.S.C. §§ 926B *et

seq.*  Prior to LEOSA, the states took diverging positions on whether out-of-state law

enforcement officers could carry concealed weapons within the state.  H.R. Rep. No. 108-560, at

3 (2004).  Against this backdrop, LEOSA mandated that all active and retired law enforcement

officers would be able to carry a concealed weapon anywhere in the United States subject to

certain conditions, thereby overriding contrary state laws.  *See* S. Rep. No. 108-29, at 4 (2003).

The Act's purpose was two-fold—to protect active and retired officers and their families from

"vindictive criminals," and to enable such officers to "respond immediately" to crimes spanning

multiple jurisdictions.  *Id.*; *see also* H.R. Rep. No. 108-560, at 4 (2004).

Section 3 of LEOSA governs retired law enforcement officers, setting forth the

conditions that they must satisfy in order to carry concealed firearms lawfully in any state.  *See*

LEOSA, Pub. L. 108–277, § 3, 118 Stat. 865, 866–67 (2004), *codified at* 18 U.S.C. § 926C.

Subsection (a) identifies two overarching requirements—status as a "qualified retired law

enforcement officer" and possession of certain identification documents:

> Notwithstanding any other provision of the law of any State or any
> political subdivision thereof, an individual who is a qualified
> retired law enforcement officer and who is carrying the
> identification required by subsection (d) may carry a concealed
> firearm that has been shipped or transported in interstate or foreign
> commerce . . . .

18 U.S.C. § 926C(a).  The term "qualified retired law enforcement officer," in turn, is defined in

subsection (c).  18 U.S.C. § 926C(c).  Included in this definition are requirements that the

individual "separated from service in good standing . . . with a public agency as a law

enforcement officer," *id.* § 926C(c)(1),[1] and that "before such separation," he had legal authority

to prevent, investigate, prosecute, or incarcerate persons for violations of law, "and had statutory

powers of arrest," *id.* § 926C(c)(2).  Subsection (d) provides individuals with two options for

satisfying its identification requirements.  Relevant here is the second option, set forth at

subsection (d)(2), which requires possession of two documents—a photographic identification

and a firearm certification:

> (A) a photographic identification issued by the agency from which
> the individual separated from service as a law enforcement officer
> that identifies the person as having been employed as a police
> officer or law enforcement officer; and
> (B) a certification issued by the State in which the individual
> resides or by a certified firearms instructor that is qualified to
> conduct a firearms qualification test for active duty officers within
> that State that indicates that the individual has, not less than 1 year
> before the date the individual is carrying the concealed firearm,
> been tested or otherwise found by the State or a certified firearms
> instructor that is qualified to conduct a firearms qualification test
> for active duty officers within that State to have met—
>> (I) the active duty standards for qualification in firearms
>> training, as established by the State, to carry a firearm of
>> the same type as the concealed firearm; or
>> (II) if the State has not established such standards,
>> standards set by any law enforcement agency within that

---

[1] The phrase "from service" appears twice in subsection (c)(1); the Court takes this to be
a scrivener's error and here omits the second appearance of the phrase.

> State to carry a firearm of the same type as the concealed
> firearm.

*Id.* § 926C(d)(2)(A), (B).[2]

In short, if an individual is a "qualified retired law enforcement officer" within the

meaning of subsection (c) and also satisfies the identification requirements of subsection (d),

then he may carry a concealed firearm in any state, notwithstanding any state law providing

otherwise. *See* 18 U.S.C. § 926C(a), (c), (d).

## B.  Factual Background and Procedural History

Before their retirement, Ronald E. Duberry, Harold Bennette, Maurice Curtis, and Robert

L. Smith (collectively "Plaintiffs") worked as correctional officers in the District of Columbia

Department of Corrections ("DOC").  *See* Corr. Am. Compl. ¶ 1, ECF No. 15.  In this capacity,

Plaintiffs interacted daily with inmates and had authority to carry firearms, serve warrants, and

make arrests on prison grounds.  *See id.* ¶¶ 26–27, 30–32.  While employed by DOC, Plaintiffs

were issued identification cards indicating their status as law enforcement officers and stating

that D.C. Code § 24–205 authorized them "to make arrest."  *See* Duberry Identification Card,

Pls.' Ex. A, ECF No. 23-1; *see also* Corr. Am. Compl. ¶¶ 61, 66, 71, 76.

Beginning in November 2012, Plaintiffs individually sought to enjoy the concealed carry

right that they believed LEOSA afforded them.  *See* Corr. Am. Compl. ¶¶ 48–59.  Duberry,

Bennette, and Curtis reside in Prince George's County, Maryland,[3] while Smith resides in the

---

[2] The complaint does not allege that the first option, set forth in subsection (d)(1), was available to the plaintiffs or that they satisfied its requirements.  That subsection requires a single photographic identification issued by the employing agency that both "identifies the person as having been employed as a . . . law enforcement officer *and* indicates that the individual has . . . been tested or otherwise found by the agency to meet the active duty standards for qualification in firearms training."  18 U.S.C. § 926C(d)(1) (emphasis added).

[3] The corrected amended complaint alleges only that Duberry, Bennette, and Curtis reside in Lanham, Temple Hills, and Forest Heights, respectively.  These places are located in Prince

District of Columbia.  *See id.* ¶¶ 8–11.  Both Prince George's County and the District of

Columbia issue permits allowing resident retired law enforcement officers to carry concealed

firearms subject to the various conditions provided in LEOSA.  *See id.* ¶ 47.  Because Plaintiffs

already possessed photographic identification identifying them as retired DOC correctional

officers, they satisfied the requirements of subsection (d)(2)(A).  *See id.* ¶ 56; Duberry

Identification Card, Pls.' Ex. A.  Accordingly, Plaintiffs sought to comply with subsection

(d)(2)(B)'s firearm certification requirement.  *See* 18 U.S.C. § 926C(d)(2)(B).

Before a Prince George's County or District of Columbia resident can seek the firearm

certification required by subsection (d)(2)(B), however, he must first submit a prior employment

certification form completed by the law enforcement agency for which he previously worked.

*See* Corr. Am. Compl. ¶ 47.  On this certification form, the agency must answer a series of

questions by checking boxes for "yes" or "no."  One question asks whether the applicant, while

employed, possessed various authorities enumerated in subsection (c)(2) of LEOSA, including

"statutory powers of arrest."  Certification of Prior Law Enforcement Employment, Pls.' Ex. B,

ECF No. 23-2.[4]  Relatedly, another question asks whether the applicant was "regularly employed

as a law enforcement officer" for the indicated duration of time.  *Id.*

---

George's County, Maryland.  *See* U.S. Board on Geographic Names, U.S. Geological Survey,
http://geonames.usgs.gov/domestic/ (last visited May 28, 2015); *see also Pharm. Research &
Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014)
("Courts in this jurisdiction have frequently taken judicial notice of information posted on
official public websites of government agencies.").

[4] The corrected amended complaint's description of the application procedures is
somewhat lacking in clarity.  *See* Corr. Am. Compl. ¶ 47.  The Court has endeavored to explain
the procedures, guided by the Prince George's County Certification of Prior Law Enforcement
Employment form and other "documents attached as exhibits or incorporated by reference in the
complaint."  *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011)
(internal citations and quotation marks omitted).  The Court notes that Plaintiffs have proffered
only the Prince George's County certification form, and not the form (if any) used by the District
of Columbia.  They allege, however, that both Prince George's County and the District of

In response to both of these questions on Duberry's prior employment certification form, a DOC human resources officer checked the boxes for "no" and wrote that Duberry was "not a law enforcement officer."  *See* Certification of Prior Law Enforcement Employment, Pls.' Ex. B; *see also* Corr. Am. Compl. ¶¶ 49–51, 55, 57.[5]  DOC took the same position with respect to the other Plaintiffs.  *See* Corr. Am. Compl. ¶ 55.  In response to inquiries, a DOC official explained that DOC correctional officers have no "statutory powers of arrest" within the meaning of subsection (c)(2).  *See* Corr. Am. Compl. ¶¶ 51, 55; *see also* 18 U.S.C. § 926C(c)(2).  Plaintiffs' counsel sought reconsideration of this determination, to no avail.  *See* Oliveria-Phelan emails of May 2014, Pls.' Ex. C, ECF No. 23-3; Bates-Phelan emails of June 2013, Pls.' Ex. D, ECF No. 23-4.

In July 2014, Plaintiffs initiated this action against the District of Columbia, Mayor Vincent Gray in his official capacity, and Director of DOC Thomas N. Faust in his official capacity (collectively "Defendants").  *See generally* Compl., ECF No. 1.  The corrected amended complaint invokes 42 U.S.C. § 1983, alleges that Defendants violated Plaintiffs' rights under LEOSA, and seeks injunctive and declaratory relief in Counts I and II, respectively.  *See* Corr. Am. Compl. ¶¶ 80–96.  By way of relief, Plaintiffs request an order directing Defendants to "certify and/or acknowledge Plaintiffs as retired law enforcement officers" under LEOSA, and they additionally request that the Court make the order "applicable to all future former D.C.

---

Columbia require the employing agency to certify that the applicant is a retired law enforcement officer.  *See* Corr. Am. Compl. ¶¶ 47(d), 54–57.  Accordingly, at the motion to dismiss stage, the Court will assume the truth of this allegation.

[5] The DOC human resources officer, however, answered "yes" in response to the question "Did the applicant separate in good standing from service with your public agency as a law enforcement officer other than for reasons of mental instability?"  Certification of Prior Law Enforcement Employment, Pls.' Ex. B.  As a logical matter, this "yes" answer cannot be reconciled with the officer's determination that Duberry was "not a law enforcement officer."  *Id.*  This inconsistency, however, is immaterial to the parties' claims.

Department of Correction[s] Officers who otherwise meet the qualifications of LEOSA." *Id.* at

17. Plaintiffs also request a declaratory judgment stating that they are "retired law enforcement

officers" under LEOSA. *Id.* The corrected amended complaint alleges that this Court has

jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 42 U.S.C. § 1983, and, as to

the declaratory judgment, 28 U.S.C. § 2201(a) and § 2202. *Id.* ¶¶ 4–6.

Defendants moved to dismiss the corrected amended complaint, contending that Plaintiffs

lack Article III standing, that this Court lacks subject-matter jurisdiction, that the individual

defendants sued in their official capacities should be dismissed, and that the corrected amended

complaint fails to state a claim. *See* Defs.' Mot. Dismiss, ECF No. 19.[6] After the motion was

fully briefed, Plaintiffs filed an unopposed motion for oral argument. *See* Mot. Oral Argument,

ECF No. 26.

## III. LEGAL STANDARDS

### A. Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies

outside this limited jurisdiction[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375,

377 (1994). Thus, to survive a Rule 12(b)(1) motion to dismiss, a plaintiff bears the burden of

establishing that a court has jurisdiction over his claim. *See Steel Co. v. Citizens for a Better

Env't*, 523 U.S. 83, 103–04 (1998) (standing and Article III jurisdiction); *Moms Against Mercury

v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007) (subject-matter jurisdiction). In determining

whether jurisdiction exists, a court may "consider the complaint supplemented by undisputed

---

[6] Defendants initially moved to dismiss the original complaint. *See* ECF No. 11. But in their memorandum in support of the pending motion, Defendants recognize that the filing of the corrected amended complaint mooted their first motion. *See* Mem. Supp. Defs.' Mot. Dismiss 1 n.1, ECF No. 19. Accordingly, the Court denied the first motion to dismiss as moot. *See* Minute Order of Nov. 14, 2014.

facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).

### B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court generally cannot consider matters beyond the pleadings at the motion-to-dismiss stage, it may consider "documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss[.]" *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal citations and quotation marks omitted).

### IV.  ANALYSIS

### A.  Jurisdiction

Defendants contest this Court's jurisdiction on two separate grounds. First, they contend that Plaintiffs lack standing, as required by Article III of the United States Constitution. *See* Mem. Supp. Defs.' Mot. Dismiss 9–19, ECF No. 19. Second, they argue that subject-matter jurisdiction is lacking under 28 U.S.C. § 1331 because this case presents no federal question. *Id.* at 6–8. For the reasons given below, the Court rejects Defendants' challenges, except as to

Plaintiffs' lack of standing to assert claims on behalf of "future" retired law enforcement officers.

### 1.  Standing

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The party invoking federal court jurisdiction bears the burden to establish the three elements of standing, which are (1) that the plaintiff "suffered an injury in fact"; (2) a "causal connection between the injury and the conduct complained of"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id.* at 560–61 (internal quotation marks and citations omitted).  At the motion-to-dismiss stage, "general factual allegations" supporting injury-in-fact, causation, and redressability suffice to establish standing, though the burden of proof grows heavier at successive stages of litigation.  *Id.* at 561.

Here, Defendants contend that Plaintiffs have failed to satisfy two of the three standing elements—injury-in-fact and redressability.  *See* Mem. Supp. Defs.' Mot. Dismiss 9–17.  Additionally, Defendants contend that Plaintiffs lack standing to seek prospective injunctive relief on behalf of "future" retired DOC correctional officers who might seek under LEOSA to carry concealed firearms.  *See id.* at 17–19.  For the reasons given below, the Court concludes that Plaintiffs have standing to seek declaratory and injunctive relief as to themselves, but not as to future retired correctional officers.

### *a.  Injury-in-Fact*

In *Lujan v. Defenders of Wildlife*, the Supreme Court explained that the injury-in-fact required for standing is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  504 U.S. at 560

(internal quotation marks and citations omitted).  The *Lujan* Court also described this protected

interest as a "cognizable interest."  *Id.* at 562.  Such an interest could consist of the mere "desire

to use or observe an animal species" for "purely esthetic purposes," though the Court went on to

hold that the plaintiffs had not sufficiently shown themselves to be within this interested class.

*Id.* at 562–67.

In *Zivotofsky ex rel. Ari Z. v. Secretary of State*, the D.C. Circuit held that a "colorable"

allegation that a plaintiff was deprived of a statutory "right" sufficed to establish an injury-in-

fact.  444 F.3d 614, 618–19 (D.C. Cir. 2006).  In that case, Zivotofsky contended that her son

had a statutory right to have "Israel" listed as his birthplace on his U.S. passport instead of

"Jerusalem," and that the Secretary of State's refusal to do so violated that right.  *Id.* at 615–16.

The court first explained that "Congress may create a statutory right or entitlement the alleged

deprivation of which can confer standing to sue even where the plaintiff would have suffered no

judicially cognizable injury in the absence of [the] statute."  *Id.* at 617 (quoting *Warth v. Seldin*,

422 U.S. 490, 514 (1975)).  The one limitation on such "statutory standing," however, is that a

plaintiff must assert a "particularized" injury, not a "generalized interest shared by all citizens in

the proper administration of the law."  *Id.* at 618.  The court concluded that because Zivotofsky's

allegation that her son had a right to have "Israel" listed as his birthplace was "at the least a

colorable reading of the statute," and because she alleged a violation of that "individual right,"

her allegations were "sufficient for Article III standing."  *Id.* at 619.

In *Parker v. District of Columbia*, the D.C. Circuit seemingly took a more generous

approach, distinguishing the "cognizable interest" required for standing from an enforceable

"legal *right*."  478 F.3d 370, 377 (D.C. Cir. 2007).  The *Parker* court concluded that the plaintiff

had standing to challenge under § 1983 certain statutory classifications that prevented him from

obtaining a firearm registration certificate, allegedly in violation of the Second Amendment.  *See id.* at 377–78.  The court reasoned that a "cognizable interest" is, consistent with *Lujan*'s other descriptors, concrete and actual and not so remote as a "generalized wish to see the Constitution and laws obeyed."  *Id.* at 377.  By contrast, the existence of a "legal right" is a matter for the merits and must be assumed for standing purposes.  *See id.* (explaining that *Lujan* Court found a legal interest "without considering whether the plaintiffs had a legal *right*" to observe animal species); *see also Judicial Watch, Inc. v. U.S. Senate*, 432 F.3d 359, 363–66 (D.C. Cir. 2005) (Williams, J., concurring) (explaining that "legally protected" interest should not be understood to mean an interest "affirmatively protected by some positive law").

The Court recognizes a tension between *Zivotofsky* and *Parker*—a tension originating, at least partially, in the *Lujan* Court's grappling with the elusive boundaries of Article III standing.  *Compare Lujan*, 504 U.S. at 578 (discussing statutorily created standing); *accord Zivotofsky*, 444 F.3d at 617, *with Lujan*, 504 U.S. at 562–63 (discussing a "cognizable interest"); *accord Parker*, 478 F.3d at 377.  *Zivotofsky* suggests that courts may consider to some degree whether a plaintiff's assertion of a protected "individual right" is "at the least . . . colorable."  *Zivotofsky*, 444 F.3d at 619.  *Parker*, by contrast, limits the standing inquiry to ascertaining the existence of a "cognizable interest," reserving any analysis of "legal rights" for the merits.  *Parker*, 478 F.3d at 377.  The two cases might be harmonized in this way: *Zivotofsky* could be read to mean that the alleged violation of a "colorable" legal right is "sufficient" for standing, but not *necessary*, *Zivotofsky*, 444 F.3d at 619, whereas *Parker* could stand for the principle that at a minimum, the invasion of a "cognizable interest" is *necessary* for standing, *Parker*, 478 F.3d at 377.  On the other hand, *Parker* appears to counsel strongly against *any* analysis of the merits in the course of determining standing, such that a court could not even ask whether a plaintiff's claim is

"colorable." *See id.* (calling "unsound" the Ninth Circuit's approach of determining existence of individual right for standing analysis and explaining that "when considering whether a plaintiff has Article III standing, a federal court *must assume arguendo* the merits of his or her legal claim" (emphasis added)).[7]

In any event, the Court today need not reconcile *Zivotofsky* and *Parker* because under either approach, Plaintiffs have asserted an injury-in-fact. Under *Parker*, the Court readily concludes that Plaintiffs have suffered an injury to their "cognizable interest" in proceeding with their applications to obtain the right to carry a concealed firearm, as permitted by LEOSA. *Lujan*, 504 U.S. at 562.[8] At the motion-to-dismiss stage, the Court must assume the truth of Plaintiffs' allegations: DOC has refused to classify them as former "law enforcement officers," and both Prince George's County and the District require such classification before Plaintiffs can

---

[7] Moreover, Judge Williams of the D.C. Circuit has warned that "[p]ending Supreme Court clarification, users of the 'legally protected' tag should proceed with caution." *Judicial Watch*, 432 F.3d at 366 (Williams, J., concurring). After Judge Williams explored the meaning of the phrase "legally protected" in *Judicial Watch*, the Supreme Court thrice used the phrase in describing the interest requisite for standing, but each time cited *Lujan* without further discussion. *See United States v. Windsor*, 133 S. Ct. 2675, 2685 (2013); *Arizona Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442 (2011); *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273–74 (2008).

[8] Because the Court concludes that Plaintiffs have asserted an injury to their interests in seeking a LEOSA concealed carry permit sufficient to support Article III standing, it declines to consider Defendants' alternative arguments that Plaintiffs have no interest in being "free from fear or to an increased feeling of confidence," or in being protected from the risk of prosecution. *See* Mem. Supp. Defs.' Mot. Dismiss 12–14. The Court notes, however, that Plaintiffs expressly disavow any risk of prosecution and aver that they "intend to comply with the law." *See* Pls.' Mem. Opp'n 10 n.3, ECF no. 23 (discussing *Sonoma Cnty. Law Enforcement Ass'n v. Cnty. of Sonoma*, 379 F. App'x 658 (9th Cir. 2010)); *see also* Corr. Am. Compl. ¶¶ 64, 69, 74, 79 (alleging that each plaintiff "wishes" to carry a concealed firearm, but not alleging that they face imminent prosecution for attempting to do so without proper authorization). As for an interest in freedom from threats or fear, Plaintiffs' position is ambiguous; they assert "the invasion of [a] statutory right, not any particular threats," while in the same paragraph contending that this invasion has "very personal consequences" and that they "each suffer . . . a sense of personal insecurity" stemming from "particular incidents of assaults and threats recounted in the Complaint." Pls.' Mem. Opp'n 11; *see also* Corr. Am. Compl. ¶¶ 59, 63–64, 68–69, 73–74, 78–79 (alleging that Plaintiffs have experienced threats or fears).

seek the firearm certification, which is in turn required by LEOSA for carrying a concealed firearm. *Lujan*, 504 U.S. at 561; *see* Corr. Am. Compl. ¶¶ 47–57. If injury to an individual's desire to observe animal species for "purely esthetic purposes" would have sufficed for standing in the *Lujan* Court's view, *see Lujan*, 504 U.S. at 562–63, then here, Defendants' alleged injury to Plaintiffs' desire to obtain rights to carry concealed firearms allegedly protected by LEOSA must suffice.[9] Nor does this case involve a "generalized wish to see the Constitution and laws obeyed": Plaintiffs have made efforts to effectuate their *own* (alleged) rights under LEOSA, efforts that they claim DOC has stymied. *Parker*, 478 F.3d at 377. Likewise, under *Zivotofsky*, Plaintiffs have standing because they have alleged the violation of a statutory right to be classified correctly as retired "law enforcement officers," under their "colorable" reading of LEOSA. *Zivotofsky*, 444 F.3d at 619; *see also infra* Part IV.C (analyzing existence of a "right" enforceable under § 1983).[10]

Lastly, Defendants argue that the injury alleged by Plaintiffs is too "conjectural or hypothetical" to support standing to seek declaratory and injunctive relief. *Lujan*, 504 U.S. at

---

[9] To be clear, in concluding that Plaintiffs have an interest in recognition as a qualified retired law enforcement officer, the Court does not apply the "zone of interests" test for analyzing the existence of an injury. This test governs the requirement of statutory (or prudential) standing, not Article III standing. *See Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153–54 (1970) (considering statutory standing under Administrative Procedure Act); *accord Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 676–78 (D.C. Cir. 2013) (Silberman, J., concurring); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 & n.4 (2014) (concluding that statutory standing concerns only whether a plaintiff "has a cause of action," not subject-matter jurisdiction).

[10] Defendants contend that this Court lacks jurisdiction because LEOSA does not provide a right enforceable under 42 U.S.C. § 1983. *See* Mem. Supp. Defs.' Mot. Dismiss 4–6. But the determination of whether LEOSA provides a right enforceable under § 1983 is not jurisdictional, but is rather an inquiry under Rule 12(b)(6). *See Doe by Fein v. District of Columbia*, 93 F.3d 861, 864, 865–67 (D.C. Cir. 1996) (affirming district court's dismissal *under Rule 12(b)(6)*, on grounds that statute did not create right enforceable under § 1983); *see also Ball v. Rodgers*, 492 F.3d 1094, 1103 (9th Cir. 2007) (holding that existence of right enforceable under § 1983 is "not jurisdictional"). The Court turns to this question below. *See infra* Part IV.C.3.

560 (internal quotation marks and citations omitted).[11]  Specifically, Defendants contend that

Plaintiffs' allegations do not "demonstrate a current violation of law, much less . . . future

violations," and that Plaintiffs' claims that they will be "subjected to potential future threats"

without the protection of a concealed firearm are purely speculative.  *See* Mem. Supp. Defs.'

Mot. Dismiss 17–18.  But because all Plaintiffs have already been refused the prior employment

certification requested from DOC and are still unable to proceed in obtaining a concealed carry

permit, *see* Corr. Am. Compl. ¶¶ 49–51, 55, 57, the injury to Plaintiffs' "cognizable interests" (or

alleged "legal rights") has already occurred—and continues to occur, absent a change in DOC's

legal position.  *Cf. City of Los Angeles v. Lyons*, 461 U.S. 95, 105–10 (1983) (holding that a

plaintiff challenging constitutionality of police arrest methods had standing to seek damages but

not to seek declaratory and injunctive relief, in the absence of evidence that he would be arrested

again or would otherwise be subjected to the same allegedly unlawful methods).

Plaintiffs' allegations suffice to establish the injury-in-fact required for standing under

Article III, whether such injury impinges on their colorable "legal rights" or merely a

"cognizable interest."  *Zivotofsky*, 444 F.3d at 619; *Parker*, 478 F.3d at 377.

### b.  Causation

Standing further requires "a causal connection between the injury and the conduct

complained of."  *Lujan*, 504 U.S. at 560.  That is, the injury must be "fairly traceable to the

---

[11] This argument appears in a separate section of Defendants' memorandum, under the
point heading "Plaintiffs Lack Standing To Seek A Forward-Looking, Permanent[] Injunction."
*See* Mem. Supp. Defs.' Mot. Dismiss 17.  In this section, Defendants initially appear only to
challenge Plaintiffs' standing to seek relief on behalf of future retired DOC correctional officers;
the Court agrees with Defendants on this issue.  *See infra* Part IV.A.1.d.  But Defendants also
assert that "Plaintiffs lack standing to pursue forward-looking, injunctive relief, *on behalf of
themselves* or third-parties not before the Court."  Mem. Supp. Defs.' Mot. Dismiss 19 (emphasis
added); *see also id.* at 17–18.  Out of caution, the Court construes Defendants' arguments to
mean that Plaintiffs' alleged injury-in-fact is too speculative, even as to the injunctive relief
sought for themselves.

challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (alterations and citation omitted).

The parties do not dispute causation. *See* Mem. Supp. Defs.' Mot. Dismiss 9–17. The Court, however, cannot rely on the parties' silence, given that jurisdiction must be confirmed when in doubt. *Steel Co.*, 523 U.S. at 93 (explaining that courts must raise jurisdictional issues *sua sponte*). The Court nonetheless readily concludes that causation is satisfied. Plaintiffs allege that DOC's erroneous interpretation of LEOSA and resultant refusal to recognize Plaintiffs as retired "law enforcement officers" directly caused their injury-in-fact. *See* Corr. Am. Compl. ¶¶ 51, 55. No "lengthy chain of conjecture" undermines the alleged causal nexus. *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 670–72 (D.C. Cir. 1996) (concluding that wildlife organizations failed to establish causation in challenge to tax credits for alternative fuel additive that allegedly caused more ethanol production, which increased corn and sugar production, which in turn increased agricultural pollution, which would allegedly impact areas inhabited by wildlife).

### c. Redressability

Lastly, a party seeking to establish standing must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (internal quotation marks and citations omitted). "[A] plaintiff does not have standing to sue when redress for its injury depends entirely on the occurrence of some other, future event made no more likely by its victory in court." *Teton Historic Aviation Found. v. U.S. Dep't of Def.*, No. 13–5039, 2015 WL 2145859, at *5 (D.C. Cir. May 8, 2015).

Here again, the Court's analysis is straightforward. A "favorable decision" for Plaintiffs, *Lujan*, 504 U.S. at 561, would result in an order directing Defendants to "certify and/or acknowledge Plaintiffs as retired law enforcement officers" under LEOSA, Corr. Am. Compl.

17.  This order would "likely" (if not certainly) enable Plaintiffs to obtain the prior employment

certification from DOC indicating that they were indeed "law enforcement officers" under

LEOSA, thereby remedying their injury-in-fact.  *Lujan*, 504 U.S. at 560; *see also* Corr. Am.

Compl. ¶¶ 47–57; *cf. Nat'l Chicken Council v. EPA*, 687 F.3d 393, 396 (D.C. Cir. 2012)

(concluding that petitioners representing consumers of livestock and poultry feed lacked standing

to set aside EPA interpretation of statute promoting renewable fuels, where they could not show

a "substantial probability" that a narrower statutory interpretation would reduce ethanol

production, which would in turn lower corn demand and feed prices).

         In their motion to dismiss, Defendants contend that Plaintiffs' alleged injury would not be

redressable on grounds that the proposed relief would run afoul of the anti-commandeering

doctrine.  *See generally Printz v. United States*, 521 U.S. 898 (1997).  LEOSA, Defendants

contend, cannot be read to authorize an unconstitutional remedy that forces DOC officials to

administer LEOSA's federal regulatory scheme.  *See* Mem. Supp. Defs.' Mot. Dismiss 16–17.

Once again, Defendants confuse the question of standing with whether Plaintiffs have stated a

claim.  Although the anti-commandeering doctrine bars *Congress* from commanding state

officials "to administer or enforce a federal regulatory program," *Printz*, 521 U.S. at 935, that

doctrine in no way diminishes "the power of federal *courts* to order state officials to comply with

federal law" because "the Constitution plainly confers this authority on the federal courts," *New

York v. United States*, 505 U.S. 144, 179 (1992) (citing Article III).  To the extent that the anti-

commandeering doctrine plays into this case, it could be relevant to an interpretation of the scope

and nature of rights created by LEOSA, given that courts must take care to avoid constitutional

doubts when interpreting statutes.  *See Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 749

(1961) ("Federal statutes are to be so construed as to avoid serious doubt of their

constitutionality."). But questions concerning rights under LEOSA bear on a Rule 12(b)(6)

analysis, not this discussion of redressability for Article III standing. *See infra* Part IV.C.3

(declining, however, to address the anti-commandeering doctrine in this case).[12]

 

    *d. Standing to Seek Injunctive Relief on Behalf of Future Retired Correctional Officers*

        Besides satisfying the three standing elements of injury-in-fact, causation, and

redressability, a plaintiff "generally must assert his own legal rights and interests, and cannot rest

his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499;

*Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (assuming that standing requirements are satisfied

before considering "the alternative threshold question whether [plaintiffs] have standing to raise

the rights of others"). The prohibition on third-party standing helps ensure that plaintiffs have

"the appropriate incentive" and assert their claims "with the necessary zeal and appropriate

presentation." *Kowalski*, 543 U.S. at 129. This prohibition is relaxed, however, where "the party

asserting the right has a 'close' relationship with the person who possesses the right" and where

"there is a 'hindrance' to the possessor's ability to protect his own interests." *Id.* at 130

(citations omitted).

        Here, Plaintiffs request that the order directing Defendants to "certify and/or

acknowledge Plaintiffs as retired law enforcement officers" under LEOSA be made "applicable

to *all future former* D.C. Department of Correction Officers who otherwise meet the

---

    [12] Indeed, the case upon which Defendants rely implicitly applied the avoidance canon and invoked anti-commandeering concerns as an alternative basis for dismissing the complaint for *failure to state a claim*, not for lack of Article III standing. *See Johnson v. N.Y. State Dep't of Corr. Servs.*, 709 F. Supp. 2d 178, 187 (N.D.N.Y. 2010) ("[P]laintiffs are faced with the untenable choice of either asking for an unconstitutional exercise of federal authority or failing to state a claim upon which relief may be granted."); *id.* at 188 (concluding that because "Congress did not intend to create an affirmative obligation" for state officers under LEOSA, "plaintiffs do not have a right to a private cause of action under LEOSA").

qualifications of LEOSA."  Corr. Am. Compl. 17 (emphasis added).  Those "future" retired

officers are, naturally, not presently before the Court, and Plaintiffs have not carried their burden

to establish both a relationship to those future officers and a hindrance that prevents them from

asserting their rights.  *See Kowalski*, 543 U.S. at 130–34 (holding that future, hypothetical

attorney-client relationship was not a "close" relationship and that attorneys failed to show any

hindrance precluding indigent individuals from challenging state laws as future plaintiffs

themselves); *see also Lujan*, 504 U.S. at 560 (holding that the party invoking federal court

jurisdiction bears the burden to establish standing).  Indeed, Plaintiffs have failed entirely to

respond to Defendants' arguments on this issue.  *See* Reply Supp. Defs.' Mot. Dismiss 7, ECF

No. 24.

Accordingly, because Plaintiffs may not assert the rights of "future" retired DOC

correctional officers, they lack standing to seek any declaratory and injunctive relief applicable

to those officers.[13]

## 2.  Subject-Matter Jurisdiction

The corrected amended complaint alleges that this Court has subject-matter jurisdiction

under 28 U.S.C. § 1331, which grants district courts original jurisdiction over "all civil actions

arising under the . . . laws . . . of the United States."  *See* Corr. Am. Compl. ¶ 4.  Federal courts

"have an independent obligation to determine whether subject-matter jurisdiction exists, even in

the absence of a challenge from any party."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

---

[13] Alternatively, Defendants appear to contend that any injury to future retired officers is
too speculative to support standing.  *See* Mem. Supp. Defs.' Mot. Dismiss 17–18.  Because the
Court has already concluded that Plaintiffs lack standing to seek injunctive relief on behalf of
future retired officers, it declines to consider this alternative argument.

Here, of course, Defendants have advanced such a challenge, though the Court rejects it because this case squarely presents a federal question.

Defendants contend that this action implicates no federal question because DOC, in determining that Plaintiffs were not "law enforcement officers" with proper arrest powers, applied only D.C. law, not federal law. *See* Mem. Supp. Defs.' Mot. Dismiss 7–8. Defendants, however, concede that federal-question jurisdiction would lie over challenges to District of Columbia or state agency actions "if the right of [Plaintiffs] to recover under their complaint will be sustained if the . . . laws of the United States are given one construction and will be defeated if they are given another." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 643 (2002) (citation and internal alterations omitted); *accord* Mem. Supp. Defs.' Mot. Dismiss 7.

Defendants' assertion that this case presents no federal question is belied by their own arguments. The parties' dispute on the merits concerns the scope of the term "statutory powers of arrest" (and more precisely, "arrest"). 18 U.S.C. § 926C(c)(2). Defendants contend that such powers, at a minimum, require the authority to execute arrest warrants and apprehend individuals "for the commission of a crime," *see* Mem. Supp. Defs.' Mot. Dismiss 24, while Plaintiffs argue that LEOSA requires only that retired law enforcement officers have had "some" statutory power of arrest, including the authority to take suspected parole violators into custody, *see* Pls.' Mem. Opp'n 21–22. Additionally, this case presents a separate, threshold federal question—the only one, incidentally, that this Court reaches—of whether the right that Plaintiffs assert is enforceable under § 1983. This determination hinges on a close analysis of the text and structure of section 3 of LEOSA. *See infra* Part IV.C.3.

At this juncture, the Court may not "peek at the substance of plaintiff[s'] arguments" any more than is necessary to confirm its jurisdiction.  *Transp. Workers Union of Am., AFL-CIO v. Transp. Sec. Admin.*, 492 F.3d 471, 475 (D.C. Cir. 2007).  For now, it suffices to conclude that because Plaintiffs' success depends on whether a provision of LEOSA is "given one construction," *Verizon Maryland*, 535 U.S. at 643 (citation and internal alterations omitted), this case "aris[es] under the . . . laws . . . of the United States," and this Court has subject-matter jurisdiction under 28 U.S.C. § 1331.[14]

\*     \*     \*

Because Plaintiffs have standing to assert claims for declaratory and injunctive relief on their own behalf and because their claims present a federal question, jurisdiction lies over these claims under both Article III and 28 U.S.C. § 1331.  Insofar, however, as Plaintiffs request relief

---

[14] Plaintiffs allege in the alternative that jurisdiction is proper under both 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983.  *See* Corr. Am. Compl. ¶¶ 4, 5; Pls.' Mem. Opp'n 17 n.8.  § 1983 is not jurisdictional in nature.  *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005) (holding that facts that defendant is a "person" and that he "act[ed] under color of [state] law" are elements of a § 1983 claim, not jurisdictional requirements). Although the question of whether § 1343(a)(3) provides jurisdiction is closer, the Court doubts that LEOSA is a statute "providing for equal rights of citizens or of all persons" within the meaning of that jurisdictional grant.  *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 620–23 (1979) (holding that Social Security Act provisions authorizing federal assistance for state-provided benefits do not secure "equal rights" under 28 U.S.C. § 1343(a)(3) or "civil rights" under § 1343(a)(4)).  Nor can § 1343(a)(3) supply jurisdiction by virtue of the fact that Plaintiffs invoke § 1983; the latter statute is of purely "procedural character" and "does not protect anyone against anything."  *Id.* at 617.  In any event, because the Court has subject-matter jurisdiction under 28 U.S.C. § 1331, it need not decide this issue.

The Court also notes that Plaintiffs are mistaken in asserting that the Court has "jurisdiction" to issue a declaratory judgment under the Declaratory Judgments Act, 28 U.S.C. § 2201 and § 2202, *see* Corr. Am. Compl. ¶ 6, because that Act "is not an independent source of federal jurisdiction," and "the availability of such [declaratory] relief presupposes the existence of a judicially remediable right."  *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).

on behalf of future retired DOC correctional officers not presently in this case, the Court

dismisses such claims for lack of third-party standing.[15]

### B. Dismissal of Individual Defendants Gray and Faust

Plaintiffs assert their claims against the District of Columbia, along with Mayor Vincent

Gray and Director of DOC Thomas N. Faust, both in their official capacities.  *See* Corr. Am.

Compl. 1.  In their motion, Defendants contend that Gray and Faust should be dismissed from

this action because the claims against them are duplicative of the claims against the District.  *See*

Mem. Supp. Defs.' Mot. Dismiss 28.

"Official capacity suits . . . 'generally represent only another way of pleading an action

against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165

(1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  Bringing

a claim against both an employer and an officer in his official capacity is usually "redundant and

an inefficient use of judicial resources."  *Cooke-Seals v. District of Columbia*, 973 F. Supp. 184,

187 (D.D.C. 1997) (dismissing Title VII and Americans with Disabilities Act claims against

officers); *see also Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996)

(applying principle to § 1983).  To be sure, there is "no requirement" mandating dismissal of

duplicative claims against officials.  *Owens v. District of Columbia*, 631 F. Supp. 2d 48, 54

(D.D.C. 2009); *see also Monell*, 436 U.S. at 690 n.55 ("[L]ocal government officials sued in

their official capacities are 'persons' under § 1983 in those cases in which . . . a local

government would be suable in its own name.").

---

[15] Defendants appear to conflate standing and subject-matter jurisdiction, *see* Mem. Supp.
Defs.' Mot. Dismiss 9, but the two are distinct, *see Moms Against Mercury v. Food & Drug
Admin.*, 483 F.3d 824, 826 (D.C. Cir. 2007) ("Where both standing and subject matter
jurisdiction are at issue, . . . a court may inquire into either and, finding it lacking, dismiss the
matter without reaching the other.").

Here, Plaintiffs have not proffered any reason why Gray and Faust's presence in the case is necessary. *Cf. Cooke-Seals*, 973 F. Supp. at 187 ("Plaintiff's argument that maintenance of the claims is necessary to obtain discovery from the officers is accompanied by no showing that the individuals have been unavailable for discovery."). Indeed, Plaintiffs have failed altogether to respond to Defendants' argument, thereby conceding the issue. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

Accordingly, the Court dismisses Gray and Faust as parties to this action. Accordingly, the Court's analysis below refers only to the remaining defendant, the District of Columbia.

## C. Failure to State a Claim

In its motion to dismiss, the District contends that Plaintiffs' complaint must be dismissed because it does not assert any right enforceable under § 1983. In the District's view, LEOSA confers only one "substantive" right—the right to carry a concealed firearm across state lines, which attaches only when an individual is a qualified retired law enforcement officer under subsection (c) *and* possesses the identification required by subsection (d), the latter of which Plaintiffs concede they lack.[16] Reply Supp. Defs.' Mot. Dismiss 4, 5; *see also* Mem. Supp. Defs.' Mot. Dismiss 5–6. Because the Court agrees that LEOSA does not unambiguously create the individual right that Plaintiffs seek to enforce, it dismisses the remaining claims against the District. The Court accordingly declines to reach the District's other arguments concerning whether the anti-commandeering doctrine creates constitutional doubt sufficient to disfavor

---

[16] The District advances this argument in the course of challenging this Court's jurisdiction. As explained above, however, this is not a jurisdictional argument. *See supra* Part IV.A.1.a (discussing "legal right" argument).

Plaintiffs' construction of LEOSA and whether Plaintiffs' powers of arrest while employed by DOC rendered them "law enforcement officers."

### 1. Legal Framework

Section 1983 provides a remedy for the deprivation of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States, by a person acting under color of any State or District of Columbia statute, custom, or usage. 42 U.S.C. § 1983. Although the "laws" of the United States include federal statutes, *see Maine v. Thiboutot*, 448 U.S. 1, 4 (1980), a cause of action under § 1983 will not lie for any statutory violation. Rather, "a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).

In *Blessing v. Freestone*, the Supreme Court enumerated three factors governing a court's determination of whether a federal statute creates a "right" enforceable under § 1983, each of which must be satisfied independently. *See id.* "First, Congress must have intended that the provision in question benefit the plaintiff." *Id.* "Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence." *Id.* at 340–41 (citation omitted). "Third, the statute must unambiguously impose a binding obligation on the States," using "mandatory, rather than precatory, terms." *Id.* at 341. At issue in *Blessing* was whether Title IV–D of the Social Security Act created enforceable individual rights through its requirements governing state child support enforcement programs that received federal funds. *See id.* at 333–35. Rather than apply the three factors to Title IV–D, the Court remanded to enable the district court "to construe the complaint in the first instance, in order to determine exactly what rights, considered in their most concrete, specific form" the plaintiffs sought to enforce. *Id.* at 346.

Subsequently, in *Gonzaga University v. Doe*, the Supreme Court reviewed its precedents governing determination of rights enforceable under § 1983, including *Blessing*. 536 U.S. 273, 280–83 (2002). At issue in *Gonzaga* were provisions in the Family Educational Rights and Privacy Act of 1974 ("FERPA") that prohibited federal funding of educational organizations with a policy or practice of making unauthorized disclosures of student records. *Id.* at 278–79. The plaintiff sued Gonzaga University under § 1983, alleging that it had released his personal information to an "unauthorized person," in violation of FERPA. *Id.* at 277. Clarifying the first *Blessing* factor, the Court emphasized that nothing "less than an unambiguously conferred right is enforceable by § 1983," *id.* at 283, and that the central inquiry is "whether or not Congress intended to confer individual rights upon a class of beneficiaries," as ascertained from the statute's "text and structure," *id.* at 285–86. Rights, moreover, must be distinguished from "broader or vaguer 'benefits' or 'interests'"; the latter commonly arise when individuals benefit incidentally from regulations or federal funding restrictions, but they do not constitute enforceable individual rights. *Id.* at 283; *see also Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons" (internal quotation marks and citation omitted)).

In concluding that the FERPA provisions at issue did not create an individual right enforceable under § 1983, the *Gonzaga* Court explained that a statutory provision evincing intent to confer individual rights must contain "rights-creating language" that is "individually focused" rather than targeting "institutional policy and practice" or having an "aggregate focus." *Id.* at 287–88 (internal quotation marks and citations omitted). The FERPA provisions pertaining to unauthorized disclosures, reasoned the Court, "entirely lack[ed]" any "rights-creating" language

and only barred the Secretary of Education from providing federal funding to offending educational institutions; the focus was thus on "institutional policy and practice" at an "aggregate" level, rather than the "needs of any particular person." *Id.* (citations omitted). Moreover, the absence of a "federal review mechanism" favors judicial recognition of "individually enforceable private rights." *Id.* at 289–90.  In the case of FERPA, Congress authorized the Secretary of Education to "deal with violations" of the Act and required the Secretary to create a "review board" for this purpose. *Id.* at 289 (emphasis omitted).

Additionally, the *Gonzaga* Court clarified the relationship between § 1983 enforceable "rights" analysis and implied right of action analysis. *Id.* at 283.  The Court explained that "whether a statutory violation may be enforced through § 1983 is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute." *Id.*  Namely, plaintiffs proceeding under § 1983 "do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes." *Id.* at 284.[17]  The two analytical frameworks, however, share a common "initial inquiry—determining whether a statute confers any right at all." *Id.* at 285; *see also Suter v. Artist M.*, 503 U.S. 347, 358 n.8 (1992) (undertaking § 1983 rights analysis by examining statute on "its own terms"); *accord Lampkin v. District of Columbia*, 27 F.3d 605, 609–10 (D.C. Cir. 1994).

---

[17] This presumption can be rebutted by showing that Congress "specifically foreclosed a remedy under § 1983." *Gonzaga Univ.*, 536 U.S. at 284 n.4 (citation omitted); *see also Blessing*, 520 U.S. at 341 (explaining that Congress may "forbi[d] recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983").  The District, however, does not attempt to rebut this presumption, and the Court discerns nothing from the text of LEOSA that would support such an argument.

Applying the above principles, the Court now considers whether the right at issue in this action is enforceable under § 1983.  At the outset, the Court notes that because Plaintiffs bring this action under § 1983, which "generally supplies a remedy," the Court need not ask whether LEOSA provides Plaintiffs with an express or implied remedy.  *Gonzaga Univ.*, 536 U.S. at 284.[18]  The sole question is "whether Congress *intended to create a federal right*"—that is, whether LEOSA "unambiguously" creates the right that Plaintiffs seek to effectuate through the remedy provided by § 1983.  *Gonzaga Univ.*, 536 U.S. at 283.

### 2.  The Right Asserted by Plaintiffs

The Court begins by ascertaining the right that Plaintiffs seek to enforce, which is itself a subject of dispute.  Close analysis of the complaint is required to discern "exactly what righ[t], considered in [its] most concrete, specific form," Plaintiffs seeks to enforce.  *Blessing*, 520 U.S. at 346 (remanding the case to enable the district court to review the complaint).

Plaintiffs challenge DOC's refusal to certify on the prior employment certification form that Plaintiffs were previously "law enforcement officers" under LEOSA, where such refusal is based on DOC's determination that they did not have the requisite "statutory powers of arrest" within the meaning of subsection (c)(2).  *See* Certification of Prior Law Enforcement Employment, Pls.' Ex. B; Corr. Am. Compl. ¶¶ 51, 55.  By way of remedies, Plaintiffs seek an order directing Defendants to "certify and/or acknowledge Plaintiffs as retired law enforcement officers" under the Act, and a declaratory judgment stating the same.  Corr. Am. Compl. 17.  If

---

[18] Two other district courts have concluded that LEOSA does not create a *remedy* by which plaintiffs can compel state authorities to give them the subsection (d) identification, but the plaintiffs in those cases apparently did not invoke § 1983.  *See Johnson*, 709 F. Supp. 2d at 183–86 (concluding that LEOSA did not create a "private remedy" enabling plaintiffs to compel state to issue subsection (d) identification); *Moore v. Trent*, No. 09 C 1712, 2010 WL 5232727, at *2–4 (N.D. Ill. Dec. 16, 2010) (same).  Moreover, Plaintiffs here do not assert a right to the identification required in subsection (d).

DOC is compelled to "acknowledge" Plaintiffs as retired "law enforcement officers," they would presumably succeed in obtaining the prior employment certification form attesting to this status. Plaintiffs claim that thereafter, they would proceed to seek their firearm certification, which is a prerequisite for obtaining a concealed carry permit issued by Prince George's County and District authorities pursuant to LEOSA. *See id.* ¶ 47.

Plaintiffs' request implicates a statutory wrinkle. The prior employment certification form at issue asks whether the applicant was "regularly employed as a law enforcement officer," and Plaintiffs seek an order that would effectively compel DOC to answer "yes." Certification of Prior Law Enforcement Employment, Pls.' Ex. B; *see also* Corr. Am. Compl. 17. On its face, however, LEOSA does not define the term "law enforcement officer"—only "qualified retired law enforcement officer," whose definition appears in subsection (c). *See* 18 U.S.C. § 926C(c). The prior employment certification form does not ask DOC to certify Plaintiffs as "qualified retired law enforcement officers" under subsection (c). Nor, it seems, could DOC do so in a manner consistent with the Act: That definition includes the requirement in subsection (c)(4) that the individual possess certain firearms qualifications, and these qualifications mirror the content of the firearm certification detailed in subsection (d)(2)(B), which certification Plaintiffs presently lack. *See id.* § 926C(c)(4), (d)(2)(B).[19]

---

[19] To be sure, the corrected amended complaint's characterization of the relief requested is not a model of clarity. In places, the complaint asserts that Plaintiffs are "qualified RLEOs" and asks for a "declaratory judgment . . . stating Plaintiffs were qualified RLEOs for purposes of LEOSA." *Id.* ¶¶ 82, 95. But the complaint ultimately asks for an order directing Defendants to "certify and/or acknowledge Plaintiffs as retired law enforcement officers" under LEOSA, not to certify that they meet all requirements of subsection (c). Corr. Am. Compl. 17. Moreover, Plaintiffs have attached to and incorporated into the complaint the prior employment certification form and email correspondence, which together elucidate the DOC determination that they challenge—that Plaintiffs, while employed by DOC, were not "law enforcement officers" within the meaning of LEOSA due to their lack of arrest authority.

The parties appear to agree, however, that for purposes of this case, *subsection (c)(2)*

functionally defines the term "law enforcement officer." That subsection enumerates the

attributes that "qualified retired law enforcement officers" must have possessed "*before their*

*separation*"—*i.e.*, when they were still employed as "law enforcement officers." *Id.*

§ 926C(c)(2) (emphasis added). Subsection (c)(2)'s effective definition of "law enforcement

officer," then, is both the basis for the prior employment certification form's queries, and the

source of Plaintiffs' asserted right.[20]

Having elucidated the relief sought by Plaintiffs and the relevant statutory provisions, the

Court now frames the right at issue in this case. In the most precise terms, Plaintiffs seek to

vindicate a negative right—the right to be free from District officials' misapplication of

LEOSA's federal definition of "law enforcement officer" in subsection (c)(2). *See* Pls.' Mem.

Opp'n 14 n.6 ("Plaintiffs are entitled not to be injured in their rights by a post hoc and inaccurate

representation by the DOC as to their status during their careers.").[21] For the sake of conceptual

simplicity, however, the Court frames the right asserted by Plaintiffs in positive terms—it is the

---

[20] The dispute in this case might be framed more narrowly: Do Plaintiffs have a right enforceable under § 1983 to have DOC define "statutory powers of arrest" in a manner consistent with LEOSA? There seems, however, to be some confusion, at least at this stage in the proceedings, about whether DOC's interpretation of "statutory powers of arrest" is the *sole* basis for its refusal to classify Plaintiffs as retired "law enforcement officers." *See* Mem. Supp. Defs.' Mot. Dismiss 24–26 (disputing Plaintiffs' status as "law enforcement officers" under D.C. law, based on interpretation of D.C. Code § 22–4505); *but see* Pls.' Mem. Opp'n 3 n.1, 19 (contending that the District "does not even argue" in its motion that Plaintiffs do not satisfy the "law enforcement officer" requirement). Accordingly, out of caution, the Court frames the inquiry more broadly.

[21] Although Plaintiffs' footnote comes closest to capturing the right at issue, the parties elsewhere spar over the right's proper framing. The District, not unreasonably, understands the complaint's request for "*certification* as a retired law enforcement officer" to mean that Plaintiffs claim that LEOSA expressly entitles them to the prior employment certification form, completed to their satisfaction. Mem. Supp. Defs.' Mot. Dismiss 6 (emphasis added). In response, Plaintiffs recast their complaint in significantly broader terms: The right at issue, they claim, is "the right to carry" afforded by LEOSA. Pls.' Mem. Opp'n 14.

right to have DOC classify them as retired "law enforcement officers" under subsection (c)(2) for purposes of completing their application for a concealed carry permit.

### 3.  Enforceability Under § 1983 of the Right Asserted by Plaintiffs

The Court now considers whether the right asserted by Plaintiffs—the right to be classified by DOC as retired "law enforcement officers" consistent with subsection (c)(2)'s definition—is enforceable under § 1983.  The Court concludes that it is not, on the grounds that LEOSA does not unambiguously provide Plaintiffs with such an individual right.

The Court is guided in its analysis by the Second Circuit's and Third Circuit's analyses of a similar, neighboring statutory provision—18 U.S.C. § 926A, which permits an individual, under certain conditions, to transport firearms from a state where they are legal to another state where they are legal, while passing through a state where they are illegal.[22]  In *Torraco v. Port Authority of New York and New Jersey*, the three plaintiffs were stopped in New York and delayed during their travels (and two arrested) for possession of firearms without a New York firearm license.  615 F.3d 129, 132 (2d Cir. 2010).  They sued various state entities and officials

---

[22] Section 926A provides in full:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: *Provided*, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

18 U.S.C. § 926A.

under § 1983, seeking to enforce their rights under § 926A.  *See id.*  The Second Circuit affirmed

the district court's grant of summary judgment.  *See id.*  On the basis of the second *Blessing*

factor, the majority held that any right protected by § 926A would be too "vague and

amorphous" for enforcement under § 1983 given the "difficulties, faced by judiciary and law

enforcement officers, inherent in [§ 926A's] application"; the statute requires knowledge of the

gun laws of both the origin and destination jurisdictions.  *Id.* at 137–38.  In so holding, the

majority also looked to the first *Blessing* factor, finding "no evidence in the text or structure of

Section 926A that would indicate that Congress intended that police officers tasked with

enforcing state gun laws should be liable for damages when they fail to correctly apply Section

926A."  *Id.* at 137.[23]

The Third Circuit undertook a similar analysis of § 926A in *Association of New Jersey*

*Rifle and Pistol Clubs Inc. v. Port Authority of New York and New Jersey*.  730 F.3d 252 (3d Cir.

2013).  In that case, the plaintiffs brought suit under § 1983 on behalf of individuals who wished

to carry firearms while walking through Newark Airport, where their possession was illegal

under New Jersey law.  *Id.* at 253, 255.  The majority held that § 926A creates the individual

right to transport firearms through a state whose laws prohibited their possession but "expressly

conditions this entitlement" on the individual's use of a vehicle for such transport.  *Id.* at 254–55.

Under this interpretation, because the plaintiffs sought to carry firearms on foot, they were

---

[23] In concurrence, Judge Wesley disagreed with the majority's conclusion that § 926A creates no right at all.  In his view, the provision creates a "negative right to avoid convictions and related sanctions," *Torraco*, 615 F.3d at 146 (Wesley, J., concurring), a right "available if, and only if, the statutory prerequisites to its application are satisfied," *id.* at 141.  "The right," he explained, "is . . . qualified and narrow, but not, as the majority holds, non-existent."  *Id.*  Judge Wesley went on to explain that he would affirm on the basis that because none of the plaintiffs were convicted, their rights under § 926A were not violated, and, alternatively, that "remedial mechanisms available on direct appeal, in habeas corpus proceedings, and in other forms of collateral attacks" precluded a remedy under § 1983.  *Id.* at 148–52.

"outside the particular class of persons to whom Congress intended to confer a right under section 926A." *Id.* at 257.[24]

Turning to section 3 of LEOSA, the Court begins (and ends) with the first *Blessing* factor—whether Congress "intended that the provision in question benefit" Plaintiffs. *Blessing*, 520 U.S. at 340. Mindful that this inquiry requires an "unambiguously conferred right" borne out in the "text and structure" of the statute, *see Gonzaga Univ.*, 536 U.S. at 282, 285, and finding guidance in *Torraco* and *New Jersey Rifle and Pistol Clubs*, the Court holds that Congress did not intend to confer upon Plaintiffs the right that they seek to enforce in this action.

Section 3 of LEOSA confers a singular individual right—the right to carry a concealed firearm, as articulated in subsection (a). Subsection (a), in turn, conditions the existence of this right on two requirements—status as a "qualified retired law enforcement officer," as defined in subsection (c), and possession of identification documents explained in subsection (d). *See* 18 U.S.C. § 926C(a), (c), (d). Any right created by section 3 of LEOSA extends no further than this. Indeed, all of the judges on the *Torraco* and *New Jersey Rifle and Pistol Clubs* panels, despite their various disagreements, scrutinized the exacting preconditions for enjoying the right to transport firearms under § 926A, such as the mode of transport and the lawfulness of possession in the origin and destination states. *See N.J. Rifle & Pistol Clubs*, 730 F.3d at 254 (explaining that right is "expressly condition[ed]" on prerequisites); *id.* at 258–59 (Jordan, J., concurring) (explaining that right is not "clearly limited" to vehicular travel, but concluding that right is limited to a defense to criminal liability); *Torraco*, 615 F.3d at 132 (explaining that right attaches "provided that several conditions are met"); *id.* at 143 (Wesley, J., concurring)

_____

[24] Writing separately, Judge Jordan reasoned that § 926A can be read to protect ambulatory transport of firearms, but that the entitlement created by the provision, evinced by its "location in the criminal code," is only "a legal defense to a state prosecution for illegal firearm possession." *N.J. Rifle & Pistol Clubs*, 730 F.3d at 262 (Jordan, J., concurring).

(explaining that right attaches only "when the statutory prerequisites are satisfied").[25]  Here,

Plaintiffs concede that they have no firearm certification, and—more importantly—the right that

they seek to enforce in this litigation is not the right to carry a concealed firearm,

notwithstanding suggestions otherwise in their opposition.  *See supra* Part IV.C.2 (defining right

at issue); *supra* note 8.[26]

Notably, the *Torraco* court further suggested that § 926A confers no *procedural* right to

an accurate assessment of an individual's eligibility to enjoy the right protected by that

provision.  Although that court focused on the "vague and amorphous" nature of the asserted

right (the second *Blessing* factor not reached in this analysis), the *Torraco* court reasoned more

broadly that it discerned "no evidence in the text or structure of Section 926A" of congressional

intent "that police officers tasked with enforcing state gun laws should be liable for damages

*when they fail to correctly apply Section 926A.*"  *Torraco*, 615 F.3d at 137 (emphasis added); *see*

---

[25] A recent decision by another judge of this Court also emphasized the conditional right afforded by section 3 of LEOSA, albeit in dicta.  *See also Mpras v. District of Columbia*, No. 2014-cv-00220, 2014 WL 6603303, at *2 (D.D.C. Nov. 21, 2014) ("LEOSA requires that one must be a 'qualified retired law enforcement officer' . . . and possess a photographic identification . . . in order to obtain *the right Congress conferred* in § 926C(a)." (emphasis added)).  In other respects, however, *Mpras* is readily distinguishable from this case: At issue there was whether Mpras had any right to the *photographic identification* required by subsection (d).  *See id.* at *1, 2.  State discretion in issuing the photographic identification is greater than its discretion to refuse to classify individuals as "law enforcement officers," given the subsection (c)(2) definition.  Nonetheless, the Court here does not conclude that this cabined discretion amounts to an individual right enforceable under § 1983.

[26] Because Plaintiffs do not presently seek to carry a concealed firearm, this Court need not express an opinion on one of the difficult issues that divided the *Torraco* and *New Jersey Rifle and Pistol Clubs* panels—precisely when the right to transport a firearm protected in § 926A (and by analogy, the right to *carry* a concealed firearm in § 926C) attaches (or is violated).  *Compare N.J. Rifle & Pistol Clubs*, 730 F.3d at 257 ("[S]ection 926A benefits only those who *wish to transport* firearms in vehicles . . . ." (emphasis added)), *with id.* at 262 (Jordan, J., concurring) ("Section 926A appears to be framed only as a *legal defense* to a state prosecution for illegal firearm possession." (emphasis added)), *and Torraco*, 615 F.3d at 146 (Wesley, J., concurring) (reasoning that § 926A is "only violated when an individual is *convicted* of unlawfully possessing a weapon").

*also id.* at 136 ("[C]ourts should not find a federal right based on a rigid or superficial

application of the *Blessing* factors where other considerations show that Congress did not intend

to create federal rights . . . ." (citation omitted)).  That is, even when a state official on the front

lines erroneously concludes that an individual falls outside the "particular class of persons"

protected by § 926A, *N.J. Rifle & Pistol Clubs*, 730 F.3d at 257, that statute creates no liability

for this mistake under § 1983.  Applying the same logic, this Court concludes that section 3 of

LEOSA similarly creates no right to sue the District or its officials "when they fail to correctly

apply" the subsection (c)(2) definition of "law enforcement officer."  *Id.*[27]

 Borrowing from tort notions of proximate cause, Plaintiffs urge this Court to focus on the

"impact" of the District's "conduct" on the right to carry established in subsection (a).  Pls.'

Mem. Opp'n 15.  To be sure, the Court recognizes that subsection (c)(2)'s definition of "law

enforcement officer" applies to the plainly rights-creating subsection (a) and thus should not be

read strictly standing "alone."  *Cf. 31 Foster Children v. Bush*, 329 F.3d 1255, 1271 (11th Cir.

2003) (holding that where the federal Adoption Assistance and Child Welfare Act is directed

toward policies and practices as opposed to individual rights, its definitional provisions cannot,

standing "alone," give rise to individual rights).[28]  That is, there might be some cases in which a

---

[27] Congress has established no "federal review mechanism" governing individuals who are wrongfully denied classification as retired "law enforcement officers" under subsection (c)(2).  *Gonzaga Univ.*, 536 U.S. at 289–90; *but see Torraco*, 615 F.3d at 150–52 (Wesley, J., concurring) (concluding that availability of direct criminal appeals and habeas corpus preclude finding that right to transport firearms under § 926A is enforceable under § 1983).  But the lack of such a review mechanism, while relevant, does not undercut the Court's conclusion that the text and structure of LEOSA do not manifest an unambiguously conferred right.

[28] *See also Houston v. Williams*, 547 F.3d 1357, 1361–63 (11th Cir. 2008) (applying *31 Foster Children* in holding that the definitional provisions of the Energy Conservation and Production Act, which established criteria for federal weatherization grants to states, did not create individual rights enforceable under § 1983); *B.H. v. Johnson*, 715 F. Supp. 1387, 1401 (N.D. Ill. 1989) (observing that "[i]t would be strange for Congress to create enforceable rights in the definitional section of" Title IV–B of the Adoption Assistance and Child Welfare Act,

failure to classify an individual as a "law enforcement officer" denies that individual his right to

carry a concealed firearm, which right he attained by satisfying the requirements of subsection

(a).  Further cutting in Plaintiffs' favor, status as a "law enforcement officer" is not a "broader or

vaguer 'benefi[t]' or 'interes[t]'" flowing from a regulatory scheme or federal funding

conditions.  *Gonzaga Univ.*, 536 U.S. at 283.[29]

But on the facts alleged here, the Court declines to blur the boundaries of LEOSA's

concealed carry right.  Here, Plaintiffs do not possess the requisite firearm certification and aver

that they have no plans to carry a concealed firearm without first obtaining a LEOSA permit

issued by local authorities.  Accordingly, subsection (a)'s concealed carry right offers them no

relief; subsection (a) does not create an implicit, standalone procedural right to be classified

correctly under subsection (c)(2)'s definition of "law enforcement officer."  *See* Corr. Am.

Compl. ¶ 84 (alleging that the District deprived Plaintiffs of "right to carry"); Pls.' Mem. Opp'n

14 (same).   Such bootstrapping cannot be squared with the Supreme Court's mandate to look to

whether a specific right, asserted by the complaint in "concrete, specific" terms, *Blessing*, 520

U.S. at 346, is "unambiguously" secured by the statute at issue, *Gonzaga Univ.*, 536 U.S. at 282.

Moreover, Plaintiffs' appeal to proximate causation misses the mark: The question under the §

1983 enforceable rights framework is not whether the District has caused some injury to their

interests (this seems to echo the standing inquiry), but whether the right at issue is an individual

---

where Title IV–B was "an expression of goals and guiding principles" structuring a federal
funding scheme).  Among the other courts of appeals, only the Eighth Circuit has expressly
endorsed the Eleventh Circuit's approach in *31 Foster Children* to "definitional" provisions, in a
case involving similar federal funding provisions in the Adoption Act.  *See Midwest Foster Care
& Adoption Ass'n v. Kincade*, 712 F.3d 1190, 1196–98 (8th Cir. 2013).

[29] In fact, LEOSA does not provide federal funding to any entity.  *See* S. Rep. No. 108-
29, at 5 (2003) (explaining that LEOSA would operate "at no cost to taxpayers"); *id.* at 10
(explaining that the Congressional Budget Office "estimates that implementing the bill would
result in no costs to the federal government, would not affect direct spending or receipts, and
would result in no direct costs to state and local governments").

right unambiguously created by LEOSA and enforceable under § 1983.[30]  *Id.*  At best, the right

asserted by Plaintiffs is an ambiguous one, and any ambiguity defeats their cause of action.  *See*

*Gonzaga Univ.*, 536 U.S. at 282.

   The Court is not unsympathetic to Plaintiffs' plight.  Today's decision in no way implies

that DOC's determination of Plaintiffs' status complied with subsection (c)(2).  That, of course,

is a matter for the merits, which the Court does not reach.  Rather, the Court concludes that even

if DOC misclassified Plaintiffs and violated the "law," Congress did not intend through LEOSA

to confer a "right" to have this mistake corrected, at least *by way of § 1983*.  *See Blessing*, 520

U.S. at 340 (holding that § 1983 provides a remedy for "the violation of a federal *right*, not

merely a violation of federal *law*").  Moreover, as the District suggests (albeit tentatively),

Plaintiffs would possibly be able to take their grievance to "state court or an appropriate

administrative forum" and attempt there to compel the District to complete the prior employment

certification form in accordance with subsection (c)(2).  Reply Supp. Defs.' Mot. Dismiss 7.  The

Court encourages Plaintiffs to pursue that potential avenue.

   Plaintiffs rely on subsection (c)(2) for an alleged procedural right to have DOC apply

LEOSA's definition of "law enforcement officer" in processing their prior employment

certification form.  But having considered the "text and structure" of the Act, the Court

concludes that because Congress conferred no such right, Plaintiffs have failed to state a claim

against the District.[31]  Additionally, for the same reason, Plaintiffs have not stated a claim for

---

   [30] By analogy, the right to vote, Plaintiffs suggest, would be eviscerated if states could
simply bar voters from entering polling stations. Pls.' Mem. Opp'n 15.  No constitutional claims
are before this Court, and Plaintiffs here are not like the voters in their analogy who, presumably,
are fully eligible to vote.

   [31] Accordingly, the Court declines to consider the other *Blessing* factors—whether the
right to be classified as a retired "law enforcement officer" under LEOSA is "so 'vague and
amorphous' that its enforcement would strain judicial competence," *Blessing*, 520 U.S. at 340–

municipal liability under § 1983,[32] and they are not entitled to a declaratory judgment.[33]

Accordingly, the Court need not reach any of the remaining issues raised by the parties.[34]

Because Plaintiffs' asserted right to classification as retired "law enforcement officers"

consistent with section 3(c)(2) of LEOSA is not a right enforceable under § 1983, the Court

grants the motion to dismiss the remaining claims against the District.


## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 19) is **GRANTED**,

and Plaintiffs' motion for oral argument (ECF No. 26) is **DENIED AS MOOT**.  An Order

consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  May 28, 2015                                    RUDOLPH CONTRERAS
                                                       United States District Judge

---

41 (citation omitted), and whether the right is supported by "mandatory, rather than precatory, terms" in LEOSA, *id.* at 341.

[32] *See Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) ("First, the court must determine whether the complaint states a claim for a predicate constitutional [or statutory] violation.  Second, if so, then the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation." (citations omitted)).  In its motion to dismiss, the District argues only that the complaint fails at the first step—*i.e.*, that Plaintiffs have not alleged any violation of a federal right actionable under § 1983.  *See* Mem. Supp. Defs.' Mot. Dismiss 21; Pls.' Mem. Opp'n 17–18.

[33] *See C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) ("[T]he availability of [declaratory] relief presupposes the existence of a judicially remediable right." (citation omitted)).

[34] Because Plaintiffs do not assert a right that is enforceable under § 1983, the Court need not reach the remaining questions in this case: whether construing LEOSA to create a right to classification as a retired "law enforcement officer" would violate the anti-commandeering doctrine, *see Printz*, 521 U.S. at 935, and, on the merits, whether Plaintiffs' allegations about their powers of "arrest" under D.C. law are adequate to state a plausible claim that they were denied retired "law enforcement officer" status, in violation of LEOSA, *see* D.C. Code § 22–3205 (now § 22–4505(a)(1)); *id.* § 24–405.