# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

RONALD E. DUBERRY, *et al.*,     :
                                 :

       Plaintiffs,             :        Civil Action No.:     14-1258 (RC)
                                 :

       v.                    :        Re Document Nos.:   53, 55
                                 :

DISTRICT OF COLUMBIA,        :
                                 :

       Defendant.            :

## MEMORANDUM OPINION

**DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

The Law Enforcement Officers Safety Act ("LEOSA") authorizes active and retired "qualified law enforcement officer[s]" with suitable identification to carry a concealed firearm interstate, contrary state or local law notwithstanding. 18 U.S.C. §§ 926B, 926C. This case, back to this Court on remand from the D.C. Circuit and presently before the Court on cross motions for summary judgment, concerns whether three former District of Columbia Department of Corrections ("DCDOC") officers meet certain statutory prerequisites to be considered "qualified retired law enforcement officer[s]" under LEOSA. Finding that Plaintiffs meet the statutory preconditions at issue in this case—including, that they each "served as a law enforcement officer for an aggregate of 10 years or more" and had "statutory powers of arrest" before separating from DCDOC, *id.* § 926C(c)(2), (3)(A)—the Court grants Plaintiffs' motion for summary judgment and denies the District of Columbia's motion for the same.

## II. BACKGROUND

### A. Statutory Framework

Before 2004, a patchwork of state laws governed whether out-of-state current or former law enforcement officers could carry a concealed firearm within a particular state's borders. *See* H.R. Rep. No. 108-560, at 3 (2004). Beginning in 1992, lawmakers introduced legislation aimed at permitting concealed carry nationwide for certain law enforcement officers. *See* H.R. 218, 107th (2001); H.R. 218, 106th Cong. (1999); H.R. 218, 105th Cong. (1997); H.R. 218, 104th Cong. (1995); H.R. 1277, 103d Cong. (1993); H.R. 4897, 102d Cong. (1992). Efforts succeeded in 2004 with the enactment of the Law Enforcement Officers Safety Act, known as "LEOSA." *See* LEOSA, Pub. L. 108-277, 118 Stat. 865 (2004) (*codified at* 18 U.S.C. §§ 926B, 926C); *see also* S. Rep. No. 108-29, at 2–3 (2003) (describing efforts to enact legislation similar to LEOSA).

LEOSA mandates that all active and retired law enforcement officers be able to carry a concealed firearm anywhere in the United States subject to certain conditions, overriding most contrary state and local laws.[1] *See* S. Rep. No. 108-29, at 4. The Act's purpose was two-fold—to protect active and retired officers and their families from "vindictive criminals," and to enable such officers to "respond immediately" to crimes spanning multiple jurisdictions. *Id.*; *see also* H.R. Rep. No. 108-560, at 4. LEOSA provides that, "[n]otwithstanding any other provision of the law of any State or any political subdivision thereof," a "qualified law enforcement officer" or "qualified retired law enforcement officer" "may carry a concealed firearm that has been

---

[1] LEOSA does not supersede laws prohibiting the possession of firearms on state or local government properties or laws permitting private persons to bar the possession of concealed firearms on their property. 18 U.S.C. §§ 926B(b), 926C(b).

shipped or transported in interstate or foreign commerce," so long as the individual also carries the requisite identification. 18 U.S.C. §§ 926B(a), 926C(a).

Section 926B(c) establishes six conditions that a current employee of a governmental agency must satisfy to be considered a "qualified law enforcement officer" under LEOSA. *Id.* § 926B(c). First, the employee must be legally authorized "to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law," and must have "statutory powers of arrest" or powers of apprehension under 10 U.S.C. § 807(b). 18 U.S.C. § 926B(c)(1). The individual must also be authorized by the agency to carry a firearm; must meet any standards established by the agency for employees to qualify to use a firearm; must not be under the influence of alcohol or drugs; must not be the subject of any disciplinary action by the agency that might result in suspension or "loss of police powers"; and must not be prohibited by federal law from receiving a firearm. *Id.* § 926B(c)(2)–(6). Section 926B also establishes that, in order to take advantage of LEOSA rights, a qualified law enforcement officer must carry "photographic identification issued by the governmental agency for which the individual is employed that identifies the employee as a police officer or law enforcement officer of the agency." *Id.* § 926B(a), (d).

Section 926C sets forth the requirements to be considered a "qualified retired law enforcement officer," which differ in some respects from the qualifications for active officers. *See id.* § 926C(c). To qualify for LEOSA rights, a retired employee must have "separated from service in good standing . . . with a public agency as a law enforcement officer." *Id.* § 926C(c)(1). The individual must also meet the relevant standards for qualification in firearms training; must not have been found unqualified for reasons related to mental health; must not be under the influence of alcohol or another intoxicating substance; and must not be prohibited by

federal law from receiving a firearm. *Id.* § 926C(c)(4)–(7). In addition, before separating from the agency, the individual must have "served as a law enforcement officer for an aggregate of 10 years or more"; must have had legal authority to "engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law"; and must have had either "statutory powers of arrest" or powers of apprehension pursuant to 10 U.S.C. § 807(b). 18 U.S.C. § 926C(c)(2)–(3). Qualified retired law enforcement officers must carry "photographic identification issued by the agency . . . that identifies the person as having been employed as a police officer or law enforcement officer." *Id.* § 926C(d)(1), (2)(A). And, if the agency-issued identification does not indicate that the retired officer has completed the appropriate firearms training, the officer must carry a separate certification form so establishing. *Id.* § 926C(d)(2).

## B. Factual Background and Procedural History

Before their retirements, Plaintiffs Ronald E. Duberry, Maurice Curtis, and Robert L. Smith worked as correctional officers in the District of Columbia Department of Corrections, each beginning in the 1970s or 1980s and serving for at least sixteen years.[2] *See* Pls.' Statement of Undisputed Material Facts ("Pls.' SUMF") ¶ 1, ECF No. 59-2; Def. District of Columbia's Statement of Undisputed Material Facts ("Def.'s SUMF") ¶¶ 22–25, ECF No. 53-19. As corrections officers, Plaintiffs were responsible for, among other things, the treatment, custody, counseling, and supervision of individuals incarcerated at DCDOC-operated correctional institutions, including the Lorton Correctional Complex in Lorton, Virginia. *See* Position Descriptions, Exs. 12–14, Def.'s SUMF, ECF Nos. 53-31, 53-32, 53-33; Decl. of Robert Smith

---

[2] Harold Bennette, who participated as a plaintiff in earlier stages of this litigation, died during the pendency of this action. *See* Statement Noting a Party's Death, ECF No. 40.

("Smith Decl.") ¶ 1, ECF No. 59-5; Decl. of Ronald Duberry ("Duberry Decl.") ¶ 1, ECF No. 59-4; Decl. of Maurice Curtis ("Curtis Decl.") ¶ 1, ECF No. 59-3.

Beginning in November 2012, Plaintiffs individually sought to enjoy the concealed carry right that they believed LEOSA afforded them. *See* Corr. Am. Compl. ¶¶ 48–59, ECF No. 15. Because each Plaintiff purportedly has photographic identification classifying them as retired employees of DCDOC, *see* Corr. Am. Compl. ¶ 56—identification that they believe satisfies the requirements of subsection (d)(2)(A)—they focused on securing firearm certification to meet the requirement of subsection (d)(2)(B). In Prince George's County, Maryland (where Mr. Duberry and Mr. Curtis reside) and in the District of Columbia (where Mr. Smith resides), an individual must submit a prior employment certification form completed by the law enforcement agency for which he previously worked before seeking firearm certification. *See* Corr. Am. Compl. ¶ 47. On this certification form, the agency must answer a series of questions by checking boxes for "yes" or "no." *See* Ex. 1, Corr. Am. Compl. One question asks whether the applicant, while employed, possessed various authorizations enumerated in subsection (c)(2) of LEOSA, including "statutory powers of arrest." Certification of Prior Law Enforcement Employment, Pls.' Ex. B, ECF No. 23-2. Relatedly, another question asks whether the applicant was "regularly employed as a law enforcement officer" for the indicated duration of time. Certification of Prior Law Enforcement Employment, Pls.' Ex. B.

In response to both of these questions on Mr. Duberry's prior employment certification form, a DCDOC human resources officer checked the boxes for "no" and wrote that Mr. Duberry was "not a law enforcement officer." Certification of Prior law Enforcement Employment, Pls.' Ex. B; *see also* Corr. Am. Compl. ¶¶ 49–51, 55, 57. DCDOC took the same position with respect to the other Plaintiffs, with the agency's former director explaining to Plaintiffs' counsel

that the agency does not believe that active or retired correctional officers of DCDOC meet all of the LEOSA requirements. *See* Email from Thomas Faust to William J. Phelan (Feb. 28, 2013) at DC Duberry001748, Ex. 1, Def.'s SUMF, ECF No. 53-20; Email from Marie D. Oliveria to William J. Phelan (May 21, 2014) at DC Duberry001760–61, Ex. 1, Def.'s SUMF, ECF. No. 53-20.

In July 2014, Plaintiffs initiated this action against the District of Columbia, former Mayor Vincent Gray in his official capacity, and former Director of DCDOC Thomas Faust in his official capacity. *See* Compl., ECF No. 1. Plaintiffs' amended complaint alleged that Defendants' actions had denied them rights under LEOSA in violation of 42 U.S.C. § 1983. *See* Corr. Am. Compl. ¶¶ 5, 80–96. Plaintiffs contended that they met all of the LEOSA conditions, including that they had "statutory powers of arrest." In support of this claim, Plaintiffs asserted that they were given identification cards stating that they had such powers under D.C. Code § 24-405. *See* Corr. Am. Compl. ¶¶ 61, 66, 71. Plaintiffs sought injunctive and declaratory relief requiring Defendants to recognize them as retired law enforcement officers for purposes of LEOSA. *See* Corr. Am. Compl. ¶¶ 89, 96. In addition, Plaintiffs asked this Court to make any order with regard to their status applicable to all retired DCDOC officers—and all DCDOC officers who would retire in the future—who otherwise meet the qualification of LEOSA. *See* Corr. Am. Compl. at 17. Defendants subsequently moved to dismiss Plaintiffs' amended complaint. *See* Defs.' Mot. to Dismiss 2d Am. Compl., ECF No. 19.

In a prior opinion, this Court granted Defendants' motion to dismiss. *See Duberry v. District of Columbia*, 106 F. Supp. 3d 245, 270 (D.D.C. 2015). This Court first found that, contrary to Defendants' arguments, Plaintiffs had standing to seek declaratory and injunctive relief as to themselves. *See id.* at 253. However, the Court agreed with Defendants that

Plaintiffs did not have standing to bring claims as to future retired correctional officers. *See id.* This Court then dismissed individual Defendants Gray and Faust from the action, reasoning that claims asserted against them were duplicative of claims against the District. *Id.* at 260–61. Finally, the Court dismissed Plaintiffs' remaining claims. *See id.* at 261–70.

The Court explained that, pursuant to the Supreme Court's decision in *Blessing v. Firestone*, 520 U.S. 329 (1997), a federal statute creates a right enforceable under 42 U.S.C. § 1983 when (1) Congress intended that the provision in question benefit the plaintiff, (2) the right assuredly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence, and (3) the statute imposes a mandatory obligation on the states. *Id.* at 261–62. Interpreting Plaintiffs' complaint as seeking "the right to have [DC]DOC classify them as retired 'law enforcement officers' under subsection (c)(2) for purposes of completing their application[s] for [] concealed carry permit[s]," *id.* at 265, the Court could not say that Congress intended to confer upon Plaintiffs the right that they sought to enforce in this action. *Id.* at 266–68. Rather, the Court construed LEOSA as conferring only one right—the right to carry a concealed firearm—and doing so only with respect to individuals who already have status as "qualified retired law enforcement officer[s]" and who already possess the identification documents required by subsection (d). *Id.* at 268–70. Accordingly, this Court explained that even if the District had misclassified Plaintiffs—an issue that this Court did not reach—Plaintiffs could not seek to correct that error through § 1983. *See id.*

Plaintiffs appealed, and the D.C. Circuit reversed this Court's decision and remanded the matter for further proceedings. *See Duberry v. District of Columbia* ("*Duberry I*"), 824 F.3d 1046, 1057 (D.C. Cir. 2016). The Circuit concluded that Plaintiffs had, in fact, alleged a right remediable under § 1983. *See id.* In the Circuit's view, the LEOSA right that Plaintiffs' sought

to vindicate satisfied each prong of *Blessing*. *See id.* First, the Circuit explained that the text of LEOSA supported Plaintiffs' claim that Congress intended LEOSA to benefit individuals like them directly. *See id.* at 1052. Specifically, the LEOSA right reached not only police officers, but also "correctional officers and parole authorities who 'engage[d] in . . . the incarceration of any person for[] any violation of law.'" *Id.* (quoting 18 U.S.C. § 926C(c)(2)).

On appeal, the District had "question[ed] whether [Plaintiffs] are entitled to claim any right under LEOSA because as correctional officers they were not 'trained to determine whether probable cause exists to make a warrantless arrest for any crime in the community,' and therefore lack the requisite statutory power of arrest." *Id.* at 1052–53 (quoting Appellee's Br. at 12, 25). The Circuit offered two responses. Assuming that the matter of whether Plaintiffs had statutory powers of arrest presented a factual question, the Circuit explained that such an issue would not provide a basis for dismissing Plaintiffs' claims. *See id.* at 1053. Plaintiffs had alleged in their complaint that they had such powers and had claimed that DCDOC had provided them with identification cards stating as much. *See id.* Those allegations were sufficient to permit Plaintiffs to survive a motion to dismiss. Assuming that the matter of Plaintiffs' statutory powers of arrest instead presented a legal question, the Circuit explained that "[g]iven the breadth of Congress's definition, the reference to 'statutory powers of arrest' necessarily means some statutory power of arrest such as a power to arrest parole violators, and not, as the District of Columbia suggests, only the police power to arrest upon probable cause." *Id.* (citing Appellee's Br. at 25). Thus, Plaintiffs' claims still were not subject to dismissal. The Circuit also noted that "contrary to the District of Columbia's suggestion at oral argument, the LEOSA does not require that, prior to retiring, a law enforcement officer's job required carrying a firearm in order to be a 'qualified retired law enforcement officer[].'" *Id.* (alteration in original).

The Circuit next found that the right that Plaintiffs sought to vindicate was not vague or amorphous, satisfying the second prong of *Blessing*. *See id.* Because Congress had provided statutory criteria for defining the LEOSA right and for establishing eligibility for rights under the statute, the scheme was subject to judicial enforcement. *See id.* Looking to Congress's "categorical preemption of state and local law standing in the way of the LEOSA right to carry," the Circuit concluded that states have a "mandatory duty" to "recognize the right" LEOSA establishes, meeting the third *Blessing* prong. *Id.* The Circuit observed that Congress did not afford states the discretion to "redefine either who are 'qualified law enforcement officers' or who is eligible for the LEOSA right." *Id.* at 1053–54.

Having already concluded that Plaintiffs stated claims under § 1983, the Circuit cited additional support for its decision in the form of legislative history. *See id.* at 1054. The Circuit then addressed the possibility that this Court had determined that Plaintiffs were not those Congress intended LEOSA to benefit until they obtained the subsection (d)(2)(B) firearms certification. The Circuit explained that "the firearms certification requirement does not define the right itself but is rather a precondition to the exercise of that right." *Id.* at 1055.[3]

On remand, this Court modified and reinstated aspects of its dismissal order that were not inconsistent with the Circuit's opinion. *See* Order Granting Defs.' Consent Mot. to Modify & Reinstate Order Granting Defs.' Mot. to Dismiss, ECF No. 37. Specifically, this Court dismissed the former mayor and the former Director of DCDOC as parties to this action and dismissed portions of Plaintiffs' complaint that sought relief on behalf of future retired DCDOC officers who otherwise meet the qualification of LEOSA. *See* Order Granting Defs.' Consent Mot. to

---

[3] Judge Henderson dissented from the panel opinion, stating that she would have affirmed this Court's dismissal order on the ground that the Court lacked subject matter jurisdiction. *See Duberry*, 824 F.3d at 1057–61 (Henderson, J., dissenting).

Modify & Reinstate Order Granting Defs.' Mot. to Dismiss.  The matter is now before the Court

on cross motions for summary judgment.  *See* Pls.' Opp'n to Def.'s Mot. Summ. J. & Cross-Mot.

Summ. J., ECF No. 55; Def. District of Columbia's Mot. Summ. J., ECF No. 53.

### III.  LEGAL STANDARD

A court may grant summary judgment when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the

litigation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is

"genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-

movant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of

factually unsupported claims or defenses and determining whether there is a genuine need for

trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The movant bears the initial

burden of identifying portions of the record that demonstrate the absence of any genuine issue of

material fact.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323.  In response, the non-

movant must point to specific facts in the record that reveal a genuine issue that is suitable for

trial.  *See Celotex*, 477 U.S. at 324.  In considering a motion for summary judgment, a court must

"eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475

F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the

light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255.  Nevertheless,

conclusory assertions offered without any evidentiary support do not establish a genuine issue

for trial.  *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

# IV. ANALYSIS

Plaintiffs, three retired DCDOC corrections officers, seek to compel the District of Columbia to acknowledge their status as "law enforcement officers," a prerequisite to Plaintiffs' enjoyment of the federally conferred right to carry a concealed firearm that is available to "qualified retired law enforcement officers" under the Law Enforcement Officers Safety Act, 18 U.S.C. § 926C. The District contends that Plaintiffs are not entitled to such recognition, arguing that (1) they did not possess "statutory powers of arrest" prior to separating from DCDOC, (2) they were not "law enforcement officers for an aggregate of 10 years," and (3) they lack suitable photographic identification necessary to avail themselves of LEOSA rights. As explained below, the Court finds that, contrary to the District's assertions—many of which were already rejected by the D.C. Circuit at an earlier stage of this litigation—Plaintiffs meet the relevant statutory requirements.

## A. Plaintiffs Had "Statutory Powers of Arrest"

Plaintiffs contend that they had "statutory powers of arrest" sufficient to meet the requirement of LEOSA subsection (c)(2). Specifically, Plaintiffs maintain that D.C. Code § 24-405 authorized them to execute warrants for the arrest of parole violators, and that the Circuit expressly recognized in *Duberry I* that such a power of arrest meets the LEOSA requirement. Mem. L. Supp. of Pls.' Opp'n to Def.'s Mot. for Summ. J. & Cross-Mot. Summ. J. ("Pls.' Mem.") at 15–31, ECF No. 55. Plaintiffs also assert that, in practice, they acted as "police" within the DCDOC correctional facilities, possibly satisfying the statutory requirement and reinforcing their position that Congress intended for LEOSA to cover them. *See* Pls.' Mem. at 38–45.

The District disagrees, arguing that "statutory powers of arrest" as used in LEOSA is a term of art that refers to authority to make a warrantless arrest within the meaning of the Fourth Amendment for commission of a crime. Mem. Supp. of Def. District of Columbia's Mot. Summ. J. ("Def.'s Mem.") at 17–36, ECF No. 53. According to the District, D.C. Code § 24-405 does not qualify and neither does any other provision that Plaintiffs cite as authorizing them to make arrests. Def.'s Mem. at 17–36, 43–45. The District also appears to contend that, even if D.C. Code § 24-405 qualifies as a "statutory power[] of arrest," only a select group of DCDOC corrections officers were, in practice, asked to execute warrants, thus, only those corrections officers qualify as having had "statutory powers of arrest" under D.C. Code § 24-405 for purposes of LEOSA. *See* Def.'s Mem. at 38–42. The Court agrees with Plaintiffs that the Circuit already rejected the definition of "statutory powers of arrest" that the District offers now. And, to the extent that the District's arguments are not foreclosed by *Duberry I*, the Court finds them unpersuasive on the merits. The Court concludes that D.C. Code § 24-405 extended to Plaintiffs a "statutory power[] of arrest" sufficient to satisfy the LEOSA requirement.

### i. Under *Duberry I*, D.C. Code § 24-405 Qualifies as a "Statutory Power[] of Arrest"

Before addressing the parties' arguments about whether Plaintiffs had "statutory powers of arrest" under LEOSA, the Court must assess whether—and, if so, to what extent—the Circuit's decision in *Duberry I* already resolved questions about the interpretation of this term. Finding that *Duberry I* rejected the District's proffered interpretation and explicitly mentioned the authority to execute a warrant for the arrest of a parole violator as sufficient to meet the statutory requirement, the Court concludes that D.C. Code § 24-405 qualifies as a "statutory power[] of arrest" under LEOSA.

Under the law-of-the-case doctrine, "a court involved in later phases of a lawsuit should not re-open questions decided . . . by that court or a higher one in earlier phases." *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) (explaining that the law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). The doctrine "promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'" *Id.* (quoting *Moore's Federal Practice* ¶ 0.404[1] (1984)). When a case is considered by a district court on remand from the court of appeals, "an even more powerful version of the doctrine," sometimes called the "mandate rule," applies. *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 n.3 (D.C. Cir. 1996). The mandate rule "requires a lower court to honor the decision of a superior court in the same judicial system." *Id.* In doing so, the lower court may not revisit issues decided "either explicitly or by necessary implication" by the higher court. *United States ex rel. Dep't of Labor v. Ins. Co. N. Am.*, 131 F.3d 1037, 1041 (D.C. Cir. 1997).

The Court agrees with Plaintiffs that the Circuit already rejected the District's definition of "statutory powers of arrest" and implicitly determined that D.C. Code § 24-405 qualifies as a "statutory power[] of arrest" sufficient to satisfy the LEOSA requirement. Specifically, in the course of determining whether Congress intended LEOSA to benefit Plaintiffs, the Circuit explained that "the reference to 'statutory powers of arrest' *necessarily* means some statutory power of arrest such as a power to arrest parole violators, and not, as the District of Columbia suggests, only the police power to arrest upon probable cause." *Duberry I*, 824 F.3d at 1053 (emphasis added) (citing Appellee's Br. at 25). The Circuit could hardly have been clearer that, in its view, a purported law enforcement officer need not have broad police powers to satisfy the

13

LEOSA "statutory powers of arrest" requirement, as the District argues here. And the Circuit plainly cited the power to arrest parole violators, a power conferred by D.C. Code § 24-405, as an example of an authority sufficient to meet the statutory requirement. *See id.*

Unhappy with the clear import of the Circuit's decision, the District maintains that *Duberry I* did not "completely" reject its interpretation. Def.'s Mem. at 19. According to the District, the Circuit's comments were mere nonbinding dicta. *See* Def.'s Mem. at 19–20. The District also contends that the Circuit's interpretation of the statutory language might have been influenced by Plaintiffs' claims that they held identification cards stating that they had statutory powers of arrest pursuant to D.C. Code § 24-405. *See* Def.'s Mem. 15–19. The Court disagrees.

The Circuit's comments responded directly to a legal argument offered by the District on appeal. The District had argued that Plaintiffs had not shown that Congress intended LEOSA to benefit them "because as correctional officers they were not 'trained to determine whether probable cause exists to make a warrantless arrest for any crime in the community,' and therefore lack the requisite statutory power of arrest." *Duberry I*, 824 F.3d at 1052–53 (quoting Appellee's Br. at 12, 25). The Circuit rejected the notion that "statutory powers of arrest" requires more than "some" power of arrest, citing the power to arrest parole violators as sufficient to meet the condition. *Id.* at 1053. And the Circuit moored its conclusion to Congress's intent that LEOSA apply broadly and not to any particular allegation made by Plaintiffs in this case. *See id.* Accordingly, the Court concludes that it is bound by the Circuit's implicit determination that D.C. Code § 24-405, which confers the authority to arrest parole violators, qualifies as a "statutory power[] of arrest" under LEOSA.[4]

---

[4] Even if the mandate rule did not apply, the Court would reject the District's interpretation of "statutory powers of arrest" on the merits. The District argues that the plain meaning of "statutory powers of arrest," the structure and language of the LEOSA statute,

## ii. D.C. Code § 24-405 Extended Arrest Authority to Plaintiffs

Having reiterated the Circuit's implied conclusion that D.C. Code § 24-405 qualifies as a "statutory power[] of arrest" for purposes of LEOSA, the Court next considers whether the statute extended arrest authority to Plaintiffs in this case. The District appears to argue that D.C. Code § 24-405 only extended arrest authority to those to whom arrest warrants were issued and not to every DCDOC officer. Def.'s Mem. at 36–42. Because Plaintiffs admit that they were never actually asked to execute a warrant pursuant to authority conferred by D.C. Code § 24-405, the District contends that they never had arrest authority under that statute. Def.'s Mem. at 36–42; *see also* Curtis Decl. ¶ 5; Duberry Decl. ¶ 5; Smith Decl. ¶ 5; Pl.'s Statement of Genuine

---

assorted case law, and the legislative history of LEOSA all support its interpretation. *See* Def.'s Mem. at 20–36. The Court disagrees on all fronts.

First, the District's argument that "statutory powers of arrest" must mean that a "statute itself provides the authorization to make a warrantless arrest," Def.'s Mem. at 34, is wholly unavailing. "Warrantless" appears nowhere in the statutory scheme, and this Court will not add statutory language that Congress omitted. *Cf. Jawad v. Gates*, 832 F.3d 364, 370 (D.C. Cir. 2016) (noting that courts "will not 'read[] a phrase into the statute when Congress has left it out'" (alteration in original) (quoting *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993)). Furthermore, "arrest" can refer to the execution of an arrest warrant issued under the statutory authority of another. *See, e.g.*, D.C. Code § 23-562(a)(1) ("A warrant issued pursuant to this subchapter shall be *executed by the arrest* of the person named." (emphasis added)). Thus, the Court disagrees that "statutory powers of arrest" obviously excludes the authority to execute arrest warrants.

Second, the Court is unpersuaded that the structure or language of LEOSA supports the District's construction. The District suggests, for example, that "statutory powers of arrest" must mean something akin to "apprehension" under 10 U.S.C. § 807(b). Def.'s Mem. at 21. But the District fails to mention that the "apprehension" language was added by amendment years after the enactment of LEOSA, apparently in an effort to expand, not restrict, the group of people who may qualify as law enforcement officers under LEOSA. *See* Pub. L. No. 112-239. Finally, the legislative history of LEOSA does not offer much in the way of clear guidance regarding how to interpret "statutory powers of arrest." The parties each cherry pick from the several statements made by witnesses or Congressmen and women that arguably supports their respective positions about the proper interpretation of this particular provision. If the legislative history reveals anything, it is what the Circuit already observed in *Duberry I*: that Congress wished for LEOSA to apply broadly and to upend any conflicting state and local laws, which lends support to Plaintiffs' construction of the terms used in the statutory scheme.

Issues in Opp'n to Def.'s SUMF ("Pl.'s Disputed Facts") ¶ 16, ECF No. 59-1. The Court agrees

with Plaintiffs that D.C. Code § 24-405 extended arrest authority to anyone to whom a warrant

could have been issued under the statute, including Plaintiffs.

D.C. Code § 24-405 provides:

> If [the] Board of Parole . . . shall have reliable information that a
> prisoner has violated his parole, said Board, . . . may issue a
> warrant to any officer hereinafter authorized to execute the same
> for the retaking of such prisoner. Any officer of the District of
> Columbia penal institutions, any officer or designated civilian
> employee of the Metropolitan Police Department of the District of
> Columbia, or any federal officer authorized to serve criminal
> process within the United States to whom such warrant shall be
> delivered is authorized and required to execute such warrant by
> taking such prisoner and returning or removing him to the penal
> institution of the District of Columbia from which he was paroled
> or to such penal or correctional institution as may be designated by
> the Attorney General of the United States.

According to the District, none of the types of officers listed in the statute were

"authorized" to execute any warrants for the arrest of a parole violator until the Board of Parole

issued such a warrant to the officer. *See* Def.'s Mem. at 36–42. And, in practice, the only

DCDOC officers who issued such warrants were members of a select group known as the

Warrant Squad. *See* Def.'s Mem. at 41–42. The Court finds the District's interpretation of the

statutory text unpersuasive and finds that the text extended arrest authority to Plaintiffs.

First, the statute makes clear that it empowers a certain group of officers—those

"hereinafter authorized"—to execute warrants for the arrest of parole violators. It appears to this

Court that the listed categories of officers have the authority to issue warrants under this

provision even if the occasion to do so never arises. Second, the language of the statute extends

this authority to "[*a*]*ny* officer of the District of Columbia penal institutions," not only to officers

serving on the Warrant Squad or to any other designated group of DCDOC officers. Certainly,

this Court cannot interpret "any" as meaning only "a select few as designated by DCDOC officials." *Cf. Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 220 (2008) ("Congress' use of 'any' to modify 'other law enforcement officer' [in 28 U.S.C. § 2680(c)] is most naturally read to mean law enforcement officers of whatever kind."). That the statute then restricts the authority to execute warrants to only certain "designated civilian employee[s] of the Metropolitan Police Department of the District of Columbia" buttresses the notion that if the legislature had intended to statutorily authorize only certain DCDOC officers to execute warrants, it knew how to do so.

Third, the District appears to read "to whom such warrant shall be delivered" as a limitation on the authority of every category of officer mentioned in the statute, denying power unless a warrant is issued. *See* Def.'s Mem. at 36–42. The Court disagrees. It seems that this language instead describes the final category of officers to whom a warrant may be issued—"any federal officer authorized to serve criminal process within the United States to whom such warrant shall be delivered." Fourth, the Court finds unavailing any argument that Plaintiffs had to have utilized this authority to qualify for LEOSA benefits. *See* Def.'s Mem. at 36–42. LEOSA requires only "statutory powers of arrest"; Congress did not include any requirement that a retired law enforcement officer must have exercised arrest authority.[5] In sum, because the record shows that Plaintiffs were "officer[s] of the District of Columbia penal institutions"—a

---

[5] For the same reason, the Court need not address Plaintiffs' contentions that in practice, they exercised "police-like" powers within the DCDOC correctional facilities. *See* Pls.' Mem. at 38–45. Congress moored the LEOSA requirement to a statutory power, not to practical experience arresting alleged criminals. And whether D.C. Code § 24-405—the statute that Plaintiffs have identified as conferring such power—authorized a particular officer to execute a warrant for the arrest of a parole violator turns on whether he or she falls into one of the enumerated categories of officers. Because there is no question that Plaintiffs were "officer[s] of the District of Columbia penal institutions," factual questions that might arise with regard to purported members of other categories—for example, whether a civilian employee of the Metropolitan Police Department was "designated" to execute warrants pursuant to this statute—do not arise in this case.

fact that the District does not contest, *see* Def.'s SUMF ¶¶ 22–25—the Court concludes that D.C. Code § 24-405 authorized them to execute warrants for the arrest of parole violators, satisfying the LEOSA "statutory powers of arrest" requirement.

**B. Each Plaintiff Was a Law Enforcement Officer for an Aggregate of 10 Years**

The Court next considers whether Plaintiffs each "served as a law enforcement officer for an aggregate of 10 years or more" before their respective separations from DCDOC. The District argues that they did not, maintaining that an individual serves as a law enforcement officer only on days that he or she is authorized to carry a firearm and explaining that DCDOC officers are only authorized to carry firearms while on particular assignments. *See* Def.'s Mem. at 15; District of Columbia's Opp'n Pls.' Mot. Summ. J. & Reply in Supp. of Its Cross-Mot. Summ. J. ("Def.'s Reply") at 6, ECF No. 57. The District asserts that Plaintiffs cannot show that they were each placed on assignments on which they would have been authorized to carry a firearm for a total of 3650 days. *See* Def.'s Mem. at 13–17; Def.'s Reply at 6 (suggesting that Plaintiffs must provide "a calculation of the days their officials duties required the use of a firearm"). The District also seems to suggest that to be a law enforcement officer, an employee must have had broad law enforcement authority and general duties. *See* Def.'s Mem. at 13.

Plaintiffs argue that LEOSA features no requirement that retired officers must have been authorized to carry a weapon, let alone any requirement that involves demonstrating that they were so authorized each day for a total of ten years. *See* Pls.' Mem. at 4, 34. Plaintiffs also assert that, in any event, they were trained to use and authorized to carry firearms as part of their job duties, even if they were not necessarily placed on ten years' worth of assignments on which they actually carried firearms. *See* Pls.' Mem. at 36–37. In addition, Plaintiffs note that "law enforcement officer" is used differently in different statutory schemes. *See* Pls.' Mem. at 36.

And they assert that the LEOSA statute does not mandate that an officer have had general duties and broad powers. *See* Pls.' Mem. at 36. The Court concludes that Plaintiffs have the better of the argument.

Except under circumstances inapplicable here, in order to be a "qualified retired law enforcement officer" under LEOSA, a former employee must have "served as a law enforcement officer for an aggregate of 10 years or more" before separating from a public agency.[6] 18 U.S.C. § 926C(c)(3)(A). Citing *Thorne v. United States*, 55 A.3d 873 (D.C. 2012), a District of Columbia Court of Appeals opinion, the District contends that "the ordinary understanding of policemen and law enforcement officers is that these terms describe professionals with general duties," including "the authority to carry a firearm at all times," and "broad authority." Def.'s Mem. at 13 (quoting *Thorne*, 55 A.3d at 878–79 (internal quotation marks omitted)). According to the District, LEOSA conforms to this understanding of law enforcement officers. *See* Def.'s Mem. at 14. The District notes that § 926B of LEOSA explicitly requires that an active employee be authorized to carry a firearm to be considered a "qualified law enforcement officer," and argues that this same requirement is implicitly applicable to retired officers seeking certification under § 926C too. *See* Def.'s Mem. at 14. The Court disagrees.

First, it bears mentioning that the Circuit appears to have rejected the District's argument in *Duberry I*, explaining that "contrary to the District of Columbia's suggestion at oral argument, the LEOSA does not require that, prior to retiring, a law enforcement officer's job required carrying a firearm in order to be a 'qualified retired law enforcement officer[].'" *Duberry I*, 824

---

[6] A former employee who did not serve as a law enforcement officer for an aggregate of 10 years or more nonetheless qualifies if he or she separated from service, after completing any applicable probationary period, due to service-connected disability. *See* 18 U.S.C. § 926C(c)(3)B).

F.3d at 1053 (alteration in original).  But, to the extent that any daylight exists between the argument that the Circuit rejected and the one that the District offers here, this Court rejects the District's contentions.  The plain text of § 926C includes no requirement that a retired officer must have been authorized to carry a firearm.  *See generally* 18 U.S.C. § 926C.  And, as mentioned above, this Court will not "read[] a phrase into [a] statute when Congress has left it out."  *Jawad*, 832 F.3d at 370 (first alteration in original) (quoting *Keene Corp.*, 508 U.S. at 208).

Interpreting the statutory language as written does not, as the District contends, produce an absurd result.  *See* Def.'s Mem. at 14.  As the D.C. Circuit has explained, "[t]he Supreme Court has equated an absurdity with an outcome so bizarre, illogical, or glaringly unjust that Congress could not plausibly have intended that outcome."  *Stovic v. R.R. Ret. Bd.*, 826 F.3d 500, 505 (D.C. Cir. 2016) (internal quotation marks and citations omitted).  There is nothing remotely absurd about Congress requiring an active officer to be authorized to use a firearm without expecting the same from a retired officer who served in a law enforcement role for at least ten years.  Furthermore, the schemes do not feature identical requirements, thus, the Court has no trouble imagining that Congress thoughtfully selected which requirements to include with respect to each category of officers.  Indeed, as the Circuit observed in *Duberry I*, Congress enacted LEOSA in the face of dissenting statements on exactly the matter of the broad definition of qualified retired law enforcement officer.  *See Duberry I*, 824 F.3d at 1054 ("The practical concerns extended to the broad definition of a qualified retired law enforcement officer to include individuals whose jobs did not require them to carry a firearm and who therefore had not been trained by their employer in the use of a firearm." (citing S. Rep. No. 108–29, at 16; H.R. Rep. No. 108–560, at 70)).  Congress addressed these concerns, the Circuit explained, "by

requiring annual firearms training to ensure that all retired officers eligible to carry concealed weapons received the same firearms training as active duty officers." *Id.* (citing H.R. Rep. 108–560, at 11, 59–60). The District may believe that, as a matter of policy, Congress should have charted different requirements. But "federal courts do not sit as councils of revision, empowered to rewrite legislation in accord with their own"—or the Government's—"conceptions of prudent public policy." *United States v. Rutherford*, 442 U.S. 544, 555 (1979).

The District's citation to *Thorne* as supporting its position is wholly unpersuasive. First, the language that the District cites is drawn from a discussion about the meaning of a provision of District of Columbia law, not the meaning of LEOSA or any other federal statute. *See Thorne*, 55 A.3d at 878. Second, while this Court hardly disagrees that "law enforcement officer" sometimes refers to officers with "general duties and broad authority," this is not always the case. For example, LEOSA was amended to clarify that its definition of "law enforcement officer" includes the Amtrak Police, the Federal Reserve Police, and others. *See* Pub. L. No. 111-272, 124 Stat. 2855 (2010). And members of the Federal Reserve Police, which is charged with "act[ing] as law enforcement officers to protect and safeguard the premises, grounds, property, personnel . . . and operations conducted by or on behalf of the Board or a reserve bank," 28 U.S.C. § 248(q)(1), are only "authorized while on duty to carry firearms." *Id.* § 248(q)(3). Moreover, they may only make arrests for either offenses committed against the United States in their presence or for felonies committed or being committed against the United States within the buildings and grounds of the Federal Reserve Board. *See id.* They do not appear to have the sort of general duties and broad authority that the District says that LEOSA mandates. Third, as Plaintiffs note, some other federal statutory definitions of "law enforcement officer" explicitly include DCDOC officers, undercutting the notion that Congress certainly

could not have intended to cover such officers under LEOSA. *See* Pls.' Mem. at 36 (citing 5 U.S.C. § 8331(20) (defining "law enforcement officer" for purposes of determining eligibility for certain retirement benefits to include certain DCDOC officers)).[7]

Here, it is undisputed that each Plaintiff worked as DCDOC corrections officer—a role in which they "engage[d] in or supervise[d] . . . the incarceration of . . . [people]," 18 U.S.C. § 926C(c)—for at least ten years. Accordingly, the Court concludes that each Plaintiff has met the requirement outlined in subsection (c)(3)(A) of LEOSA.

## C. The Court Need Not Determine Whether Plaintiffs Have Photographic Identification That Satisfies Subsection (d)

Finally, the District contends that Plaintiffs do not possess photographic identification required by 18 U.S.C. § 926C(d) to lawfully carry a firearm under LEOSA. Def.'s Mem. at 44–45; Def.'s Notice of Suppl. Authority at 2–3, ECF No. 64. The District cites two recent opinions in which federal district courts determined that plaintiffs could not prevail on LEOSA claims asserted under 42 U.S.C. § 1983 because they lacked the requisite identification. *See* Def.'s Notice of Suppl. Authority at 1 (citing *Burban v. City of Neptune Beach, Fla.*, No. 3:17-cv-262-J-34JBT, 2018 WL 1493177 (M.D. Fla. Mar. 27, 2018), and *Henrichs v. Ill. Law Enf't Training*

---

[7]  Though, as explained above, a retired law enforcement officer need not show that he was authorized to carry a weapon while on duty to be eligible for LEOSA rights, Plaintiffs offer persuasive evidence that they were so authorized. They note that to qualify for their corrections officer positions, they had to demonstrate proficiency in the use of firearms. *See* Pls.' SUMF ¶ 7; *see also* Ex. E-3, Job Description DC-007-09, ECF No. 55-8; Ex. E-4, Job Description DC-007-09, ECF No. 55-8. They also explain that, as DCDOC officers, they received "extensive" pre-service firearms training. Furthermore, throughout their respective tenures, they were each tested and qualified annually or semi-annually in the use of a pistol, a shotgun, and an M-14 semi-automatic rifle. *See* Pls.' SUMF ¶¶ 3, 7. And they were authorized to carry firearms in responding to escapes and escorting prisoners. *See* Pls.' SUMF ¶¶ 27–29, 32–34. As the above analysis of "statutory powers of arrest" demonstrates, the question of whether or not Plaintiffs had authority to carry a weapon does not necessarily turn on whether Plaintiffs exercised that authority.

& *Standards Bd.*, No. 15 C 10265, 2018 WL 572708 (N.D. Ill. Jan. 26, 2018)). The Court rejects the District's argument that Plaintiffs must prove that they have photographic identification that satisfies subsection (d) before the Court can grant their motion for summary judgment.

First, such a determination is a logical extension of the Circuit's reasoning in *Duberry I*. In its prior opinion, the Circuit explicitly rejected the notion that Plaintiffs might "lack the [LEOSA] right until they obtain the subsection (d)(2)(B) firearms certification." *Duberry I*, 824 F.3d at 1055. In the Circuit's view, "the firearm certification requirement does not define the right itself but is rather a precondition to the exercise of [the LEOSA] right." *Id.* The District appears to offer a different version of this argument, asserting that Plaintiffs must prove that they meet other preconditions for exercising LEOSA rights before they can be deemed "qualified retired law enforcement officers" to whom Congress conferred LEOSA rights. *See* Def.'s Mem. at 44–45. This Court thinks that, just as the firearm certification did not define the LEOSA right, the possession of a photographic identification that is required to exercise the right does not define the LEOSA right. Other district courts have reached a different conclusion. But, of course, those courts were not bound by or acting in light of binding precedent from a higher court. Indeed, both of the district court opinions that the District cites rejected the D.C. Circuit's reasoning in *Duberry I*. *See Burban*, 2018 WL 1493177, at *7–8; *Henrichs*, 2018 WL 572708, at *5.

Second, Plaintiffs note explicitly that they have not asked this Court to address whether they have identification that satisfies the requirements of subsection (d). *See* Pls.' Mem. at 4–5. And the Court accepts Plaintiffs' representations about the scope of their complaint. *Cf. Caterpillar Inc. v. Williams*, 482 U.S. 386, 395 (1987) (observing that plaintiffs are the "masters of the complaint"). The Court agrees that whether or not Plaintiffs have sufficient identification

is irrelevant for purposes of determining whether they have met certain statutory preconditions to be considered "qualified retired law enforcement officers." The Court concludes that each of the relevant disputed requirements is met and that Plaintiffs are entitled to summary judgment.[8]

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment (ECF No. 55) is **GRANTED**, and the District of Columbia's motion for summary judgment (ECF No. 53) is **DENIED**. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: June 7, 2018                                                    RUDOLPH CONTRERAS
                                                                       United States District Judge

---

[8] This Court does not conclude that Plaintiffs are unalterably "qualified retired law enforcement officers" for purposes of LEOSA. This is because some of the statutory preconditions for "qualified retired law enforcement officers" are mutable characteristics. For example, no court could accurately declare on the basis of motions and responses filed months prior that a retired officer certainly is not "under the influence of alcohol or another intoxicating or hallucinatory drug or substance" such that he meets the requirements of subsection (c)(7). Instead, this Court only concludes that Plaintiffs meet the requirements listed in subsection (c)(1)–(3). Specifically, Plaintiffs each separated from service in good standing with a public agency as a law enforcement officer; before such separation, they each were authorized to engage in or supervise the incarceration of persons and they had statutory powers of arrest; and before separation, they each served as a law enforcement officer for an aggregate of 10 years or more.